MICHELLE RENEE JOHNSON, Plaintiff-Appellee, v. NATIONAL SUPER MARKETS, INC., Defendant-Appellant.

Fifth District No. 5—92—0873

Opinion filed February 3, 1994.

Daniel M. Reavy, of National Super Markets, Inc., of St. Louis, Missouri, for appellant.

Stephanie Robbins, of Edwardsville, for appellee.

JUSTICE MAAG delivered the opinion of the court:

The plaintiff, Michelle Johnson, brought this action to recover for injuries she sustained when she slipped and fell on ice in a parking lot owned by the defendant, National Super Markets, Inc. A jury trial was held from September 14 through September 16, 1992. At the close of the plaintiff's case and at the close of all of the evidence, the defendant moved for a directed verdict. The circuit court denied both motions. The jury returned a verdict in favor of the plaintiff in the amount of $42,507.25 but reduced it to $21,253.63, which represents the jury's allocation of plaintiff's negligence in the amount of 50%. The circuit court entered judgment on the verdict. The defendant filed a motion for judgment notwithstanding the verdict, and it was denied. The defendant appeals. We affirm.

On January 5, 1989, Barbara Johnson, the plaintiff's mother, drove to the defendant's grocery store to pay her telephone bill. The plaintiff, Barbara's adult daughter, went with her. The temperature was in the twenties, and the plaintiff could see that it was drizzling rain when she and her mother drove into the defendant's parking lot. She noticed that snow was piled 10 to 15 feet high around the light posts. Because Barbara is disabled, the plaintiff went inside of the store to pay the telephone bill. As the plaintiff exited the passenger side door of her mother's vehicle, she glanced and saw a black puddle of water approximately two feet in diameter which was located about two feet from the passenger side door of her mother's vehicle. The plaintiff testified that the water from the puddle was coming from a pile of snow around a light post, which was located two feet from the front passenger side of their vehicle. The plaintiff walked around the puddle.

According to the plaintiff, immediately after she entered the defendant's grocery store, the weather changed from drizzling rain to pouring rain. The plaintiff noticed that the line in which she needed to be to pay the telephone bill was very long. Instead of standing in

line, she walked around the store and looked at various items. When the line shortened, she paid the bill.

Approximately 15 to 20 minutes after the plaintiff entered the store, she came outside. She walked to her mother's vehicle with her head down, looking at the pavement. As she approached the puddle on the passenger side of her mother's vehicle, she decided to step over it rather than walk around it as she had previously done. As the plaintiff attempted to step over the puddle, she initially lifted her right foot, and subsequently, her left foot went up, and she slipped and fell onto her buttocks. The plaintiff was approximately two feet from the car door when she fell. She said that she could feel ice underneath of her body after she fell, and that as she looked at the puddle, she could see "glazey stuff." She likened its appearance to the manner in which water appears when it refreezes. The plaintiff also stated that she had slivers of frozen material on the back of her clothing after she removed herself from the puddle.

Blanche Woll, a frequent patron of the defendant's store, testified that she was at the defendant's store on January 5, 1989, and that the defendant's parking lot was "very treacherous." Woll said that the snow had been plowed up around the light posts higher than five feet. She said that the cars would make the snow "slushy" by driving over it. Overnight, the slush would refreeze. Woll did not park beside the light posts because she knew that "even though the temperature didn't get above freezing, *** sometimes a little would melt and it would run down and then *** refreeze and then it was a *** more clear, slick ice." Woll also stated that the parking lot area sloped toward the store. Approximately 45 minutes after entering the store, Woll left the store and started to walk toward her car. She stated that the temperature was in the high teens and that it had not yet started to rain. As she exited the defendant's grocery store, she saw the plaintiff fall "pretty hard" on the ice. Woll testified that the ice on which the plaintiff fell was a "clear, slicker type of ice than *** the other [that] had been chewed up and refrozen because it was rougher and it was dirty."

Barbara's testimony was almost indistinguishable from the plaintiff's testimony regarding the weather conditions and the circumstances surrounding the fall. She stated that she walked around the back of her car to help her daughter after she fell; however, she was not able to help her. She said that the pavement was slick and she could feel ice underneath of her feet even though she could not actually see the ice. Barbara stated that the snow from the pile was streaming along the pavement, forming a puddle on the passenger side of her vehicle in the area that her daughter had fallen.

Ron Hoover is the owner of the lawn care service that provided snow plowing for National during the fall and winter of 1988. In fact, Hoover plowed the snow that fell prior to January 5, 1989. He piled the snow around the light posts on the defendant's parking lot. Hoover stated that the snow around the light posts would melt and drain down the slope of the lot toward the entrance of the store. He said that every grade on the parking lot sloped down toward the building, and that he did not believe that the parking lot contained drains. Although Hoover said that he believed that the proper way to plow the snow on the defendant's parking lot was to push it on the sides of the building, the only instruction that the store manager gave him was "don't put it by the sides of the building." Hoover testified that if the snow had been placed on the sides of the building, it would have allowed the snow to drain to the back of the building. This would have avoided the drainage from the snow collecting in the parking lot area.

The defendant contends that the trial court erred in failing to grant its motions for directed verdict and judgment *n.o.v.*

The correct standard for the trial court to apply in ruling on a motion for a directed verdict or for a judgment *n.o.v.* was set forth in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14, as follows:

> "In our judgment verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

(See *Thompson v. County of Cook* (1993), 154 Ill. 2d 374, 382, 609 N.E.2d 290, 293.) Therefore, the court will consider the evidence and the inferences to be drawn therefrom in the light most favorable to the nonmovant and will not pass upon the credibility of the witnesses or decide what weight to assign their testimony, as these matters are typically within the province of the jury. (*Lewis v. Cotton Belt Route—St. Louis Southwestern Ry. Co.* (1991), 217 Ill. App. 3d 94, 121-22, 576 N.E.2d 918, 939, *appeal denied* (1991), 142 Ill. 2d 655, 584 N.E.2d 130.) Furthermore, a judgment *n.o.v.* may not be granted merely because a jury verdict is against the manifest weight of the evidence. (*Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 310, 356 N.E.2d 32, 36.) If there is any evidence, together with inferences which may be drawn therefrom, which demonstrates a substantial factual dispute or if the assessment of the credibility of the witnesses or the weight of the conflicting testimony is determinative of the outcome, the court may not enter a judgment *n.o.v. Maple v. Gustafson* (1992), 151 Ill. 2d 445, 454, 603 N.E.2d 508, 512.

■ The appellant in the instant case apparently believes that a *de novo* review is required by this court with no presumption of validity being given to the trial court's ruling. We note, however, that we will not reweigh the evidence because the reviewing court is to apply the same standard that was applied at the trial level in determining whether a motion to direct a verdict or a motion for judgment *n.o.v.* should have been granted. (See *Thacker v. UNR Industries, Inc.* (1992), 151 Ill. 2d 343, 353, 603 N.E.2d 449, 454.) As will become clear in our later discussion, we believe that the trial court properly denied the motions for directed verdict and judgment *n.o.v.*

Further, although it is not clear, it appears that the defendant in the case at bar is claiming that the jury's verdict is against the manifest weight of the evidence. On review, a jury's finding on the issue of comparative negligence will not be set aside absent a finding that the verdict is contrary to the manifest weight of the evidence. (*Rainey v. City of Salem* (1991), 209 Ill. App. 3d 898, 905, 568 N.E.2d 463, 468.) The verdict will not be set aside merely because the jury could have drawn different inferences and conclusions from conflicting testimony or because the reviewing court would have reached a different result if it had been the trier of fact. (*Rainey*, 209 Ill. App. 3d at 905, 568 N.E.2d at 468.) "A verdict is contrary to the manifest weight of the evidence only where, upon review of all of the evidence in the light most favorable to the party who prevailed at trial, an opposite conclusion is clearly apparent, or the jury's finding is palpably erroneous and wholly unwarranted, is clearly the result of passion or prejudice, or appears to be arbitrary and unsubstantiated by the evidence." (*Rainey*, 209 Ill. App. 3d at 905, 568 N.E.2d at 468.) We do not believe that this is the case here.

Initially, the defendant contends that the plaintiff failed to prove that it was negligent because the ice on which the plaintiff fell was the result of a natural accumulation. Hence, the defendant claims that it was under no duty to remove the ice.

To prove negligence, the plaintiff must set forth sufficient facts showing the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately resulting from that breach. (*DiBenedetto v. Flora Township* (1992), 153 Ill. 2d 66, 70, 605 N.E.2d 571, 573.) A property owner owes no common law duty to remove natural accumulations of ice; therefore, he cannot be found liable for injuries resulting from such accumulations. (*Webb v. Morgan* (1988), 176 Ill. App. 3d 378, 382, 531 N.E.2d 36, 39.) However, if the property owner chooses to remove snow or ice, he is charged with the duty of exercising ordinary care in accomplishing that task. (*Webb*, 176 Ill. App. 3d at 382, 531 N.E.2d at 39.) Hence, his duty is to

"prevent an unnatural accumulation on his property, whether that accumulation is the direct result of the owner's clearing of the ice and snow, or is caused by design deficiencies that promote unnatural accumulations of ice." (*Webb*, 176 Ill. App. 3d at 382-83, 531 N.E.2d at 39.) Because each case turns on its own facts, it is the duty of the court to determine, on a case-by-case basis, what is or is not an unnatural accumulation of ice.

■ We believe that the jury could have determined that the icy puddle, in which the plaintiff fell, was the product of an unnatural accumulation of ice caused by water running off snow from the banks onto the parking lot and refreezing. (See *Webb*, 176 Ill. App. 3d at 383, 531 N.E.2d at 39.) The evidence suggests that the defendant caused the unnatural accumulation when Hoover pushed the snow around the light posts which created large piles of snow, and the snow would thaw and drain onto the parking lot and refreeze when the temperature dropped. (See *Webb*, 176 Ill. App. 3d at 383, 531 N.E.2d at 39.) Three witnesses, including the plaintiff, testified that the ice was under a puddle of water which was streaming out of a large pile of snow. Hence, we believe that the defendant was under a duty to maintain the parking lot in a reasonably safe condition and that it breached that duty by allowing an unnatural accumulation of ice to form on its parking lot, which was the proximate cause of the plaintiff's fall which caused her to injure herself.

■ The defendant claims that the plaintiff's reliance on *Webb* is misplaced because the plaintiff in *Webb* offered expert testimony on meteorological data and the effect of the slope of the parking lot on water running into various areas and freezing. We note, however, that according to Supreme Court Rule 220(1) (134 Ill. 2d R.220(1)), an expert witness is to render an opinion *"within his expertise* at trial." (Emphasis added.) His purpose is to help the jury understand the evidence. In the case at bar, the plaintiff did not need an expert witness to testify to matters that can be appreciated by persons of ordinary intelligence. In fact, we do not believe that experts are allowed to testify to such matters. It is within the common knowledge of a person to know what the temperature is on a particular day and that water can melt, freeze, or refreeze depending on the temperature at any given time. It is also within common knowledge for a person to know that, if a parking lot slopes toward the entrance of the store and snow melts, the water will run downhill and collect at the entrance. Further, we believe that it is within common knowledge that if the sun shines, snow will melt, and if it is in a large pile, the water from the snow will run down the pile, and if the temperature drops, it will refreeze in the area in which it collected. Hence, we dis-

agree with the defendant's contention that the plaintiff needed an expert to testify to the aforementioned matters.

Additionally, in order for a plaintiff to recover in a slip-and-fall case on ice and snow, she must show that the property owner had actual or constructive knowledge of the condition. (*Ostry v. Chateau Ltd. Partnership* (1993), 241 Ill. App. 3d 436, 444, 608 N.E.2d 1351, 1357.) The evidence presented at trial showed that the defendant contracted with Hoover to provide snow-plowing services. Hoover testified that he would have piled the snow against the building to allow the snow to drain off of the parking lot, but the defendant told him not to pile the snow against the building. Hoover said that because of this instruction, he had to pile the snow around the light posts which were uphill from the store. Hoover stated that the water from the snow would necessarily melt from the heat of the sun and drain to the entrance of the store.

■ After reviewing the aforementioned evidence, we believe that a jury could reasonably find that the defendant was aware of the aforementioned conditions on its parking lot or that if the defendant had exercised reasonable care it would have had knowledge of the conditions that existed on its parking lot.

■ The defendant also claims that the puddle in which the plaintiff fell was known and obvious to her prior to the fall; therefore, she must be responsible for her own conduct. We disagree. The plaintiff admitted that she saw the puddle of water before she fell; however, she did not sue for falling in a puddle of water. Plaintiff sued for falling on a patch of ice. She stated that she did not actually see the ice. She felt the ice underneath of her body only *after* she fell. Therefore, we will not further address this argument due to the fact that the ice was not open and obvious to the plaintiff at the time that she fell.

■ The defendant's final contention is that the plaintiff did not prove that the parking lot was negligently constructed without proper drainage. We find no need to address this argument because the plaintiff proved her case by showing that the defendant was negligent in another manner. Hence, there was no need for the plaintiff to show that the parking lot was negligently constructed. Further, the jury was instructed as follows:

"The plaintiff claims that the defendant was negligent in one or more of the following ways:

a. That it allowed snow removed from its parking lot to be piled in such a location that it melted leaving an unnatural accumulation of ice formed between the parking are [*sic*] and the store entrance.

b. That in removing snow from the parking lot, it failed to place the removed snow in such a way that it would melt without creating a hazard.

c. That it constructed and maintained its parking lot without proper drainage such that a large accumulation of removed [s]now necessarily drained toward or[ ] into the pedestrian walkway where it was subject to refreezing into ice.

d. That i[t] failed to warn the Plaintiff of the danger of the unnatural accumulation of ice between the parking lot and the store entrance."

By the terms of the instruction itself, the plaintiff was not required to prove each of the foregoing factual allegations.

Applying the *Pedrick* test, we cannot say when all of the evidence is viewed most favorably to the plaintiff that it so overwhelmingly favors the defendant that no verdict against it could ever stand. (See *Hollembaek v. Dominick's Finer Foods, Inc.* (1985), 137 Ill. App. 3d 773, 781, 484 N.E.2d 1237, 1243.) Furthermore, based on the aforementioned analysis, we cannot say that the jury's decision, finding the defendant negligent, was against the manifest weight of the evidence.

In light of the foregoing reasons, we affirm the judgment of the circuit court.

Judgment affirmed.

CHAPMAN and WELCH, JJ., concur.