No. 2--01--1002  

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

RICHARD RUSSELL, ) Appeal from the Circuit Court ) of Lake County.

Plaintiff-Appellant, )

                                ) 

v.               )  No. 00--L--34

)

THE VILLAGE OF LAKE VILLA,  ) Honorable

 ) John R. Goshgarian, 

Defendant-Appellee.  )  Judge, Presiding.      

_________________________________________________________________

JUSTICE KAPALA delivered the opinion of the court:
  

Plaintiff, Richard Russell, appeals from an order of the circuit court of Lake County granting summary judgment to the defendant, the Village of Lake Villa (the Village).  For the reasons that follow, we reverse the judgment of the circuit court and remand the cause for further proceedings.                      FACTS

At 7 a.m. on January 18, 1999, plaintiff, Richard Russell, was rushing to catch the Metra commuter train that left from Lake Villa en route to Chicago when he slipped on a patch of ice in that portion of the train station that was owned and maintained by the defendant Village.  His slip on the ice caused him to fall and become injured.  At the place where he slipped on the ice, the surface consisted of brick pavers under an overhang.  A parking lot with handicapped spaces was adjacent.  Employees of the Village had plowed snow in the parking lot and piled it over the curbing for the handicapped slots.  Photographs show the snow pile to be in close proximity to the brick pavers, with some of it actually on the pavers and with ice having formed in the parking lot and on the pavers around the base of the snow mound.  Employees of the Village were supposed to keep the pavers and walkways free from snow and ice and were instructed to salt the pavers whenever they saw a condition of ice or snow.  Glen McCollum, the Village's director of public works, inspected the train station every day, inside and outside, most likely including the day plaintiff fell and was injured.  McCollum himself also plowed the parking lot near the handicapped spaces.  According to McCollum, the Village owned the area covered by the pavers where plaintiff slipped on the ice, while Metra owned and maintained a concrete platform from which people boarded and exited the trains.  He also testified that the  snow pile depicted in the photographs could have been a "combined effort" between the Village and Metra because Metra needed to clean its platform and he did not know where Metra put its snow, although McCollum ususally was the one who plowed where the mound of snow was piled.  That Metra may have blown its snow onto the pile was an "assumption" on his part.

According to plaintiff, at the time he slipped on the ice, the morning was "pretty cold."  He did not recall any recent snows.  He did not remember whether any water was dripping or whether there was any water on the ground where he slipped.  He knew he slipped on a patch of ice on the pavers where the ice formed an apron at the base of the mound of snow that had been plowed and piled over the handicapped parking curbings.  Although plaintiff did not see snow melting from that mound, in looking at a photograph taken the day after his injury, he testified at his deposition that it seemed "clear" to him that "the ice got there as a result of the snow melting in liquid form and then being frozen as the temperature lowered."  He testified that the days were warm and the nights were below freezing.  McCollum, at his deposition, looked at the photograph and testified that the mound was not from a new snow event and that it appeared as though the ice had formed from snow melting off that mound.  He also testified that, as a general proposition, he was aware that snow could melt and form ice when it refroze and could, therefore, cause a dangerous condition in the walkways.  

     The Village brought a motion for summary judgment on the sole  basis that the accumulation of ice upon which plaintiff slipped and which caused him to be injured was a natural accumulation.  The trial court granted the Village's motion and denied plaintiff's motion to reconsider.  Plaintiff timely appeals from the denial of his motion to reconsider.

DISCUSSION

     Plaintiff first contends on appeal that the trial court erred in granting summary judgment because, he asserts, the trial court was presented with a genuine issue of material fact as to whether the accumulation of ice was an unnatural condition, which would foist liability on the Village.  We agree with plaintiff.

     We review 
de
 
novo
 a grant of summary judgment.  
County of Lake v. Board of Education of Lake Bluff School District No. 65
, 325 Ill. App. 3d 694, 698 (2001).  Summary judgment is appropriate when the pleadings, depositions, and affidavits show that there is no genuine issue as to any material fact and that the moving party is  entitled to judgment as a matter of law.  
Grobe v. Hollywood Casino--Aurora, Inc.
, 325 Ill. App. 3d 710, 715 (2001).  If fair-minded people could draw different inferences from the undisputed facts, summary judgment should not be granted.  
Grobe
, 325 Ill. App. 3d at 715.  Summary judgment is a drastic means of resolving litigation and should be allowed only when the moving party's right to judgment is clear and free from doubt.  
Elizondo v. Ramirez
, 324 Ill. App. 3d 67, 71 (2001).  The aim of summary judgment is not to try issues, but to determine whether any triable issues of fact exist.  
Aetna Casualty & Surety Company of Illinois v. James J. Benes & Associates, Inc.
, 229 Ill. App. 3d 413, 416 (1992).

     We point out that the Village does not dispute that the ice patch was the proximate cause of plaintiff's injuries.  The Village casts the issue as follows: what caused the ice?  The Village maintains that plaintiff has presented an insufficient factual basis in the record to establish a material issue of fact that would entitle him to a judgment in his favor, namely, that there is a nexus between the snow and the ice.  See 
Romano v. Morrisroe
, 326 Ill. App. 3d 26, 28 (2001).  In ruling on a motion for summary judgment, the court is required to construe all evidentiary material strictly against the movant and liberally in favor of the nonmovant.  
Tolve v. Ogden Chrysler Plymouth, Inc.
,   324 Ill. App. 3d 485, 489 (2001).  Plaintiff insists that he has established that there is a nexus between the pile of snow that the Village plowed and the ice upon which he slipped.  See 
Crane v.  Triangle Plaza, Inc.
, 228 Ill. App. 3d 325, 331 (1992).  He, therefore, argues that the ice was an unnatural accumulation.

     Before we get to this analysis, we will set forth a property owner's duty generally.  A property owner has no duty to remove a  natural accumulation of snow and ice from his property; however, a property owner who voluntarily undertakes the removal of snow and ice can be subjected to liability where the removal results in an  unnatural accumulation of snow or ice that causes injury to a plaintiff.  
Nowak v. Coghill
, 296 Ill. App. 3d 886, 893 (1998).  In the present case, the Village of Lake Villa owned the property  where plaintiff slipped, and it undertook to remove snow and ice from that property.  

     A mound of snow created by a municipality's snow-removal efforts is properly considered an unnatural accumulation.  
Ziencina v. County of Cook
, 188 Ill. 2d 1, 13 (1999).  McCollum testified in his deposition that he and other Village employees plowed the parking lot and piled the snow on the curbings.  The photographs 
 
depict some of the piled snow on the pavers.  We determine that
 
plaintiff has raised a genuine issue of material fact as to whether
 
the snow pile was an unnatural accumulation.  It is plaintiff's contention that the logical inferences to be drawn from his evidence are that snow melted off the mound, puddled, and refroze, forming the ice patch that caused plaintiff to slip.  These inferences are buttressed by McCollum's testimony that he was aware that snow could melt and form ice when it refroze.  Plaintiff reasons that, since the mound of snow was an unnatural accumulation put there by employees of the Village, the ice was an unnatural accumulation as well.  In response, defendant argues that plaintiff did not establish the ice's origin.   

     Plaintiff relies on the Appellate Court, Fifth District, case of 
Johnson v. National Super Markets, Inc.
, 257 Ill. App. 3d 1011 (1994).  In that case the plaintiff was injured when she fell on an ice-encrusted puddle of water in a grocery store parking lot.  The evidence presented to the jury was that snow in the parking lot had been plowed and piled 10 to 15 feet high around the light posts.  When the plaintiff got out of her car to go into the store, she saw that water in the puddle was coming from a mound of snow heaped against a nearby light post.  
Johnson
, 257 Ill. App. 3d at 1012.   By the time she left the store and returned to her car, the ice had formed over the puddle.  The plaintiff's mother testified that water was streaming from the snow into the puddle.  
Johnson
, 257 Ill. App. 3d at 1013.  The private contractor who plowed the snow testified that the grade of the parking lot sloped down toward the building and the safest place to pile the snow would have been at the sides of the building, where it would drain into the back of the property rather than collecting in the parking lot.  The store owner, however, instructed him not to pile the snow at the sides of the building.  
Johnson
, 257 Ill. App. 3d at 1014.  The jury returned a verdict in the plaintiff's favor, and the defendant appealed from the trial court's denial of its motion for judgment notwithstanding the verdict and its motion for a new trial.  The appellate court held that the jury properly could have determined that the icy puddle in which the plaintiff fell was the product of an unnatural accumulation of ice caused by water running off snow from the banks onto the parking lot and refreezing.  
Johnson
, 257 Ill. App. 3d at 1016.  

     Plaintiff in the present case contends that his own deposition testimony, the deposition testimony of Glen McCollum, and the photographs of the scene bring this case within the rule announced in 
Johnson
.  

     Defendant attempts to distinguish 
Johnson
 and relies instead on 
Crane v. Triangle Plaza, Inc.
, 228 Ill. App. 3d 325 (1992), and  
Gilberg v. Toys "R" Us, Inc.
, 126 Ill. App. 3d 554 (1984).  In 
Crane
, the plaintiff fell on an ice patch in the commuter parking lot of the West Chicago train station and was injured.  It was a gravel parking lot with depressions containing ice.  The day before  her fall there were areas of packed snow, melted snow, and puddles  of water in the parking lot.  The snow was an unnatural accumulation caused by plowing.  The only evidence in the record regarding a connection between the snow and the ice in the depression in which the plaintiff fell was her deposition testimony  that she was "99 and 99/100%" sure that the snow melted, collected  in the depression area, and froze.  
Crane
, 228 Ill. App. 3d at 330.  There, the trial court granted summary judgment in favor of the defendant.  On appeal we held that the plaintiff's testimony was not enough to raise a genuine issue of material fact as to whether the ice was created by the unnatural accumulation of snow.  
Crane
, 228 Ill. App. 3d at 331.

     
Gilberg
 rose to the appellate court from the trial court's grant of summary judgment to the defendant parking lot owner.  The plaintiff there fell on ice in a depression in the lot.  The other evidence showed that it had not snowed in the previous 24 hours and  that there was a natural accumulation of snow; there was, however,  nothing in the record to connect the natural accumulation of snow to the ice.  The appellate court held that the plaintiff had the burden at the summary judgment stage to present facts indicating that the ice patch was other than a natural accumulation.  
Gilberg
, 126 Ill. App. 3d at 558.

     All of the above cases acknowledge that (1) where the snow mound is an unnatural accumulation and (2) water melts from such a snow mound and refreezes, the resulting ice is also an unnatural accumulation.  

    To the extent that defendant relies on 
Riccitelli v. Sternfeld
, 1 Ill. 2d 133 (1953), and 
Ziencina v. County of Cook
, 188 Ill. 2d 1 (1999), for the opposite conclusion, its reliance is misplaced.  In 
Riccitelli
, the landowners were absolved from liability because the plaintiff could not prove that the lump of ice that caused her to fall was formed from snow they had banked in their snow-removal efforts; and 
Ziencina
 did not involve a slip on ice, but a snow mound that obstructed the plaintiff's view of an intersection.  

     It is the plaintiff's burden to present facts indicating a "direct link" between the snow pile and the ice.  See 
Madeo v. Tri-Land Properties, Inc.
, 239 Ill. App. 3d 288, 294 (1992).  We believe that plaintiff in the present case has presented facts that indicate such a direct link.  The ice surrounded the base of the snow pile and was contiguous with it and appeared to have come from water that melted off the snow.  Plaintiff testified that the days were warm and the nights were below freezing.  He described the ice where he slipped as clear, smooth, and transparent.  He recalled no recent precipitation.  McCollum stated that the snow mound was not from a new snow event and it appeared to have melted and refrozen, causing the ice patch.       

     Defendant now objects that the photographs do not accurately depict the scene because they were taken the day after plaintiff's injury.  Defendant did not move to strike the photographs from plaintiff's response to the motion for summary judgment.  Moreover, plaintiff testified that the ice patch upon which he slipped was the same approximate size as that depicted in the photographs.  Defendant characterizes the testimony as assumptions and opinions.  However, the court in 
Johnson
 emphasized that it is within the common knowledge of a person to know what the temperature is on a particular day and that water can melt, freeze, or refreeze depending on the temperature at any given time. 
Johnson
, 257 Ill. App. 3d at 1016.  Thus, McCollum was not speculating when he  described what he saw in the photograph and when he testified to his general knowledge that piled snow could melt and refreeze.  It is true that in 
Johnson
 there was eyewitness testimony to the melting snow running along the pavement to the puddle and in this case there are no eyewitnesses.  At this stage plaintiff is required to show only facts that indicate a nexus between the snow and the ice.  This he has done.  

     Defendant suggests that the evidence was that Metra might have caused the snow pile.  When asked if the snow mound could be a combination of the Village's snow plowing activities and Metra's,  McCollum replied, "It could be because I don't watch Metra do their  job so I don't know."  McCollum's response was complete speculation  based upon no evidence and did not refute plaintiff's evidence that the Village plowed the snow and placed it in the pile over the curbings.  

     Plaintiff next contends that, in the alternative, if the mound  of snow was a natural accumulation, the Village voluntarily undertook a duty to keep the walkways free from ice and snow.  Because we hold that the snow pile was an unnatural accumulation, we need not consider this argument.

To support its motion for summary judgment, defendant raises for the first time in this appeal the argument that the Village had no notice of the condition and cites section 3--102 of the Local Governmental and Governmental Employees Tort Immunity Act  (745 ILCS 10/3--102 (West 2000)).  Plaintiff urges that defendant has waived this issue.  As a general rule, questions not raised in the trial court are deemed waived and may not be raised for the first time on appeal.  
In re Marriage of Webb
, 331 Ill. App. 3d 1104, 1107 (2002).  While this is the rule insofar as the appellant is concerned, the appellee may defend the judgment on appeal, or urge any point in support of said judgment, so long as the factual basis for the determination of such point was before the trial court.  
Jensen Disposal Co. v. Town of Warren
, 218 Ill. App. 3d 483, 487 (1991).  Defendant raised this issue as its second affirmative defense in its answer to the complaint.  The issue was therefore before the trial court.  

     It is the plaintiff's burden to prove that the Village had notice of the defect.  
Rios v. City of Chicago
, 331 Ill. App. 3d 763, 769. In support of its position, the Village relies on subsection (b)(2) of the above-cited statute (745 ILCS 10/3--102 (b)(2) (West 2000)), which provides as follows:

"(b) A public entity does not have constructive notice of a condition of its property that is not reasonably safe within  the meaning of Section 3--102 (a) if it establishes ***

(2) The public entity maintained and operated such an  inspection system with due care and did not discover the  condition."

     Without citation to any authority, defendant argues that it did not have constructive notice of the ice because McCollum inspected the train station every morning and did not discover the ice.  Failure to cite relevant authority is in violation of Supreme Court Rule 341 and results in waiver of the issue on appeal.  188 Ill. 2d R. 341(e)(7).  However, because we remand this cause to the circuit court for further proceedings, this issue is likely to  be addressed to the trial court again.  For that reason we will discuss it on its merits.  

     Plaintiff replies that whether defendant had notice is a question of fact for a jury to determine.  We agree.  See 
Coultas  v. City of Winchester
, 208 Ill. App. 3d 238, 240-41 (1991).
  McCollum testified that he was aware of the hazard posed by plowed snow melting and refreezing.  Given this awareness, 
plaintiff has presented sufficient evidence to raise a genuine issue of material fact as to whether the Village had constructive notice, and the issue is one for a jury to decide.

     For the foregoing reasons, the judgment of the circuit court of Lake County is reversed, and the cause is remanded for further proceedings consistent with this opinion.

     Reversed and remanded.

     McLAREN and BYRNE, JJ., concur.