# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Hornacek v. 5th Avenue Property Management, 2011 IL App (1st) 103502**

---

| | |
|---|---|
| Appellate Court Caption | JENNIFER HORNACEK, Plaintiff-Appellant, v. 5th AVENUE PROPERTY MANAGEMENT, JOHN BRANNEN, LAWRENCE BRANNEN, LINDA MARKS, THE BRANNEN FAMILY PARTNERSHIP, and ERIC RICE, Individually, and d/b/a ET Snow Removal & Lawn, Defendants-Appellees. |
| District & No. | First District, Second Division<br>Docket No. 1-10-3502 |
| Filed | September 30, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action for the injuries plaintiff sustained when she slipped and fell on ice in defendants' parking lot, the entry of summary judgment for defendants was reversed, since plaintiff presented sufficient evidence that the ice was an unnatural accumulation resulting from the snow removal performed by the company retained to maintain the parking lot and that defendants had actual or constructive notice of the condition. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-L-12672; the Hon. James D. Egan, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on Appeal

Dixon Law Office, of LaGrange (G. Grant Dixon III, of counsel), for appellant.

Leahy, Eisenberg & Fraenkel, Ltd. (William P. McElligott, of counsel), and Maisel & Associates (Yolanda M. Kielar, of counsel), both of Chicago, for appellees.

Panel

JUSTICE HARRIS delivered the judgment of the court, with opinion.

Presiding Justice Quinn and Justice Cunningham concurred in the judgment and opinion.

## OPINION

¶ 1 Here we are called upon to determine whether the circuit court properly granted summary judgment in favor of defendants John Brannen, Lawrence Brannen, Linda Marks, The Brannen Family Limited Partnership, 5th Avenue Property Management (collectively 5th Avenue) and defendant Eric Rice, individually, and d/b/a ET Snow Removal & Lawn (collectively Rice). Plaintiff Jennifer Hornacek's complaint sought personal injury damages from a fall on ice in 5th Avenue's parking lot. Rice was contracted to perform snow removal services for the lot.

¶ 2 We hold that Hornacek has raised sufficient evidence of genuine factual issues to withstand both defendants' respective motions for summary judgment. She has provided evidence from which a trier of fact could reasonably find that Rice negligently maintained the parking lot owned by 5th Avenue which proximately caused her injuries and that 5th Avenue had notice, either actual or constructive, of an unnatural condition which proximately caused her injuries. The entry of summary judgment in this case was not proper.

¶ 3 JURISDICTION

¶ 4 On August 17, 2010, the circuit court granted Rice's motion for summary judgment. On October 25, 2010, the circuit court granted 5th Avenue's motion for summary judgment. On November 15, 2010, the circuit court denied Hornacek's motion to reconsider the granting of summary judgment in favor of Rice. On November 19, 2010, Hornacek timely filed her notice of appeal. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments entered below. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. May 30, 2008).

¶ 5 BACKGROUND

¶ 6 On July 14, 2008, Hornacek filed her third amended complaint against defendants 5th

Avenue and Rice.[1] In her complaint, Hornacek alleged that 5th Avenue owned, managed, and maintained the building located at 1402-1418 West 55th Street in Countryside, Illinois. Hornacek alleged that prior to January 25, 2007, the parking lot at the building had been repaved. According to her complaint, on January 25, 2007, while walking to her car in the parking lot, Hornacek stepped on an unnatural accumulation of ice, slipped, and fell. Hornacek alleged that 5th Avenue had a duty to remove snow and ice from the building. Hornacek contended 5th Avenue was negligent because: it failed to properly maintain the parking lot of the building, failed to remove ice and snow from the parking lot, failed to remove an unnatural accumulation of snow and/or ice from the parking lot, failed to move snow into such a location as to prevent it from melting into the parking lot of the building, improperly removed snow from the parking lot of the building causing it to melt and create an unnatural accumulation of snow and or ice in the parking lot, improperly diverted melting snow and ice from the building into the parking lot, and failed to warn of one or more of these conditions. Hornacek claimed that as a proximate result of these negligent acts or omissions, she suffered injuries.

¶ 7    In her third amended complaint, Hornacek also alleged Rice had entered into an agreement for snow removal at the building from November 2006 through April 2007 and that on or before the date of Hornacek's fall, Rice removed snow from the building. Hornacek alleged that on the date of her fall, there existed an unnatural accumulation of ice in the parking lot and that she stepped on that unnatural accumulation of ice, slipped, and fell. Hornacek alleged that Rice had a duty to remove the snow and ice from the building and that Rice was negligent because he: failed to remove ice and snow from the parking lot of the building, failed to remove an unnatural accumulation of snow and or ice from the parking lot of the building, failed to move snow into such a location as to prevent it from melting into the parking lot of the building, improperly removed snow from the parking lot of the building causing it to melt and create an unnatural accumulation of snow and/or ice in the parking lot of the building, improperly diverted melting snow and ice from the building into the parking lot of the building, and failed to warn of one or more of these dangerous conditions. Hornacek alleged that her injuries were a proximate result of the alleged negligent acts or omissions.

¶ 8    The building where Hornacek fell is an "L" shaped building with a parking lot in the front, or south side of the building, and another parking lot in the back of the building, or north side. The shape of the building on its north side had an indentation, which formed the "L" shape of the building.

¶ 9    Both Rice and 5th Avenue filed motions for summary judgment against Hornacek. Several depositions were taken, which the parties relied upon in arguing their respective positions on the motions for summary judgment. During his deposition, Wayne Lawler, a coworker of Hornacek's, testified that he did not know how long before Hornacek's injury

---

[1]Hornacek also named James Douglas & Associates, Inc., and Imperial Paving as defendants in her third amended complaint; however, those defendants are not parties to this appeal.

the lot had been plowed. He testified that he went to the scene of the accident 5 or 10 minutes after Hornacek fell, which he believed was in the late morning or early afternoon. In the parking lot he observed his coworker, David Hampton, helping Hornacek into a car to take her to the hospital. He noticed she was in pain because she was moaning. Lawler testified that in December of 2006, he had also fallen on ice in the parking lot. At the time of his fall, he told the secretary at the office to be careful walking in the parking lot. Although Lawler was not sure where the ice came from that caused his fall, he did state that after the parking lot had been repaved, it seemed as though the drainage was different. Lawler also testified he noticed "at times an enormous pile of snow" would be plowed against the building into the indentation on the north side of the building. He believed that during the day, the sun would melt the piles of snow next to the building and the water would run into the north parking lot. At night, the water would freeze. He admitted that he never observed the snow melting, but he did see the snow piles decrease in size and he noticed that the pavement would be wet. In the past, garbage bins had been placed in the area, but they had been removed, which allowed snow to be placed in that area. He testified that he never made any complaints about the snow piles against the building, but that he felt that because of the melting, the plowed snow should have been placed somewhere else. He described the snow piled against the building as "excessive," and claimed that on one occasion he observed the snow pile being above his head. Lawler testified that he did not know why Hornacek fell, nor did she ever tell him. On the day of Hornacek's fall, Lawler recalled it being a cold and sunny January day. He thought that the parking lot that day was a "little wet" and that the source of that wetness was snow melting. He could not recall any ice in the back parking lot on the day Hornacek fell. He later stated that the parking lot seemed to be wet and that the sun was melting the snow. However he could not remember if there was a snow pile in the indented area on the north side of the building on the date of Hornacek's fall.

¶ 10    During her deposition, Hornacek testified that she remembered that the weather on the day of the accident "was a little bit warmer than it had been" and that "the sun was kind of out." She estimated that she fell between noon and 1 p.m. When she initially parked her car, she noticed that the ground where she parked was snowy and icy. She testified that it did not snow that day nor could she remember when it had snowed prior to that day. She described the snow as "snow on top of thick–what looked like thicker ice to me, cloudy frozen water." She testified that on her way into the office, she walked around the ice. After an hour or so in the office, she exited the office and went to the parking lot. She had to take a different path to get to her car than when she came into the office because two vans had subsequently blocked her original path. She described the condition of the parking lot on the way back to her car as "snowy" and "slushy." She estimated that 8 to 10 feet from her car, she fell. When asked what caused her to fall, Hornacek answered "I don't–what looked like to me or what I now know was probably invisible ice. Nothing was shiny, you couldn't see anything. I slipped." She then stated that once she fell, she knew that she had fallen on invisible ice. She described the invisible ice as free of slush and snow and was clear, allowing her to see the blacktop below. She stated that it did not look any different from pavement and she could not tell the depth of the ice. Hornacek did not know the source of the ice. She testified that prior to her fall, she had complained to the secretary of her company regarding the icy

-4-

conditions of the parking lot. Hornacek also could not recall if snow was piled up against the building that day. She testified further that she knew she had slipped on ice because she felt the ice with her hands.

¶ 11    David Hampton, a coworker of Hornacek's and one of the first people to come to her aid after her fall, testified in his deposition that there was almost always ice in the parking lot during the winter months. He stated that he knew Hornacek slipped on a "big ice flow that kind of went from the ice pile that bisected the parking lot." He recalled that on the day of the incident, there were snow piles on the north side of the building in the indented area. He thought it was the snow piles that caused the ice flow because it was "reasonable to assume that it was the snow pile because it was big and the sun would hit it during the day, and what would happen was the run off would then kind of travel in a northeasterly direction on an angle *** and it would just, you know, freeze." On the day of Hornacek's fall, he recalled, it was cold, and just east of where he found Hornacek on the ground, there was frozen, solid, black-colored ice. He stated that the ice had been there pretty much all winter. He did not see Hornacek fall, but responded when an unknown person came into the office informing him of the incident. David testified that he found Hornacek sitting on the "ice flow" that he described. Although David knew of multiple complaints from coworkers, he did not know if any managers at the office complained to the owners of the building regarding the ice situation in the north parking lot. During his deposition, he stated that he thought that he had asked the landlord not to have snow plowed up against the building in the indentation on the north side. When asked whether he had any discussions with the landlord about plowing the lot, he answered "I can remember mentioning it to John Brannen." He could not give a date, but stated that "I'm positive that he was aware that we, you know, had an issue with that." When questioned about when he mentioned this to Brannen, he stated "probably the winter before." David testified that he asked Brannen "if there could be *** another way to plow those things, to talk to the plow guy because it was just creating a problem." He testified further that he never personally witnessed the lot being plowed.

¶ 12    Bonnie Hampton, the owner of Prudential American Homes, which was a tenant of 5th Avenue, and Hornacek's employer, testified in her deposition that it was the normal custom of the office for her employees to use the rear or north parking lot. This was the parking lot where Hornacek fell. She testified that she did not know where the ice Hornacek fell on came from, nor could she describe the color or size of the ice. Although she did not see Hornacek fall, she and her son, David, went to Hornacek's aid and helped her into David's car to be taken to the hospital. She could not recall if, on the day of Hornacek's fall, the parking lot was icy and she did not know where the alleged ice that caused the fall came from. During her deposition, she first stated that she could not recall if she made any specific complaints to the landlord that the parking lot was icy. Later, she testified that she did complain to the landlord about the snowplowing and, specifically, the accumulation of snow on the north wall of the building. She then later testified that before the accident, she had not received complaints concerning icy conditions being present in the area where Hornacek fell. She could not offer an opinion as to what caused Hornacek's fall and when asked whether it was her understanding that on the day of the accident snow melted from a snow pile and caused ice to form, she answered "no."

¶ 13    Rice, in his deposition, testified that he is the sole proprietor of E.T. Snow Removal and Lawn, the company responsible for plowing the parking lot at the building. He testified that water has "always" tended to pool at the north side of the building, the side with the parking lot where Hornacek fell. He testified further that in the winter of 2006 to 2007, he plowed the parking lot whenever one to three inches of snow accumulated. According to his ledger, which he kept in the ordinary course of business, the last time he plowed the subject parking lot was January 21, 2007, when he plowed the parking lot one time, did clean up one time, and spread five bags of rock salt. Rice remembered that he received a call from 5th Avenue informing him that someone had fallen in the parking lot and requesting that he go and spread more salt. He could not remember the exact date of the request, and his ledger book did not show it, but he thought that was because he fulfilled 5th Avenue's request for free and, thus, he would not have entered it in his ledger book. He recalled that he saw "[a] little bit of snow, a little bit of ice," when he arrived at the property. Rice also testified that he only plowed the parking lot. He did not perform snow or ice removal on the sidewalks of the property.

¶ 14    John Brannen, one of the owners of 5th Avenue, testified in his deposition that as the landlord, his company was responsible for salting and plowing the snow in the parking lots, but not the sidewalks. He admitted that a patron of one of the other tenants of the building had slipped and injured herself at the property previously, but that accident occurred in the south or front parking lot, not the north parking lot where Hornacek was injured. He assumed that whenever Rice plowed snow, he also salted the parking lot. He testified that previous to Hornacek's fall, American Prudential Homes had never made any complaints about Rice's snow plowing. After the incident, 5th Avenue told Rice not to plow snow into the indentation of the north side of the building anymore.

¶ 15    On June 7, 2010, Rice filed his motion for summary judgment. Rice argued that summary judgment was proper because the scope of the duty he owed to Hornacek was defined by the terms of the contract he had with codefendant 5th Avenue, which he did not breach. Rice argued he fully complied with the requirements of the contract, which required him to plow the parking lot when one to three inches of snow accumulated. The contract did not require him to monitor the parking lot for snow or ice accumulations. Rice stated that he performed snow removal services at the parking lot on January 21, 2007, but was not required under the contract to perform snow removal services again until after the day of Hornacek's accident. As support for his position, Rice attached to his motion a copy of the contract between himself and 5th Avenue, as well as weather reports showing that 1.6 inches of snow fell on January 21, 2007, and that from January 22, 2007, until the day of Hornacek's accident, January 25, 2007, the accumulation of snow was less than 0.1 inches each day.

¶ 16    Rice argued that he did not breach the duty owed Hornacek because there was no evidence offered that he negligently plowed the parking lot prior to her accident or evidence that she fell on an unnatural accumulation of ice. Rice maintained that, based on the deposition testimony of Hornacek, which he attached to his motion, there was no evidence that Hornacek slipped and fell on a condition he created. Specifically, Rice contended Hornacek could not identify the source of the invisible ice, how long the ice was present in the parking lot, or that she was aware of the conditions of the parking lot. Rice argued that

Hornacek failed to present any evidence that the alleged accumulation of snow and ice in the parking lot was unnatural. In addition to the weather reports from the time of the accident, the contract between Rice and 5th Avenue, and Hornacek's deposition, Rice also attached to his motion Hornacek's third amended complaint, his answer, his own deposition, and his work ledger showing the days he plowed the property.

¶ 17    On July 20, 2010, Hornacek filed her response to Rice's motion for summary judgment, which she later amended on August 13, 2010. In her response, Hornacek argued that she testified to the location and cause of her fall, that the weather reports Rice attached to his motion are not admissible or relevant, and that Rice had a duty to Hornacek. Hornacek stated that Rice caused the unnatural accumulation of ice that Hornacek slipped on by plowing snow into the corner of the parking lot, which later melted and formed the ice. Hornacek attached to her response the deposition testimony of Eric Rice, John Brannen, David Hampton, Wayne Lawler, and Bonnie Hampton, as well as her own deposition testimony.

¶ 18    On July 17, 2010, Rice replied that Hornacek failed to establish any nexus between his snowplowing and the ice upon which she fell and injured herself. Rice also argued that Hornacek failed to show any evidence that the snow piles melted and formed the ice that she later slipped on. The circuit court granted Rice's motion on August 17, 2010.

¶ 19    On August 17, 2010, defendant 5th Avenue filed its motion for summary judgment arguing that there was no evidence to support Hornacek's claims of negligence or that she fell on an unnatural accumulation of ice. Specifically, 5th Avenue argued that Hornacek failed to show that the ice she slipped on was formed in an unnatural way and that Hornacek failed to prove that it had actual or constructive notice of the condition that caused her injury, such that it could be held liable. In support of its motion, 5th Avenue attached to its motion Hornacek's third amended complaint, Hornacek's deposition testimony, and the deposition testimony of John Brannen.

¶ 20    In response to 5th Avenue's motion for summary judgment, Hornacek argued she is able to establish that 5th Avenue had both actual and constructive notice of the ice in the parking lot. Hornacek maintained that 5th Avenue had actual notice because it knew of at least one previous fall that occurred in the parking lot. Hornacek argued that 5th Avenue had constructive knowledge because the defective condition had existed for a period of more than 20 months before Hornacek's fall. Based on this, Hornacek argued that she at least established a question of fact regarding notice, such that summary judgment was improper. Hornacek also responded that she had proven that the accumulation of ice was unnatural.

¶ 21    In its reply to Hornacek's response, 5th Avenue maintained that it did not have actual or constructive notice of any defective condition on the property. 5th Avenue argued that the only prior complaint that it had received was from a patron of another tenant in the building who fell in the front or south parking lot, unlike Hornacek, who fell in the back or north parking lot.

¶ 22    On September 21, 2010, Hornacek filed her motion to reconsider the circuit court's order granting Rice's motion for summary judgment, arguing that the circuit court erred in its application of existing law. Specifically, Hornacek argued that she presented sufficient evidence of an unnatural accumulation of ice in the parking lot. On November 15, 2010, the

circuit court denied Hornacek's motion to reconsider. This appeal followed.

¶ 23                                         ANALYSIS

¶ 24     Before this court, Hornacek argues she presented sufficient evidence from which a fact finder could conclude that an unnatural accumulation of ice in the subject parking lot caused her to fall and become injured and, therefore, summary judgment was improper. Hornacek maintains that Rice negligently created this condition and that 5th Avenue had actual or constructive notice of the condition from prior falls, complaints, previous unnatural accumulations in the parking lot, and the long-standing unnatural accumulation existing prior to her fall. Rice contends the circuit court properly granted summary judgment in his favor because Hornacek failed to present any evidence that an unnatural accumulation of ice existed and that he created the alleged unnatural accumulation of ice that caused her injuries. 5th Avenue contends the trial court properly granted summary judgment in its favor because Hornacek failed to set forth evidentiary facts supporting her position that there was an unnatural accumulation of ice or that 5th Avenue had actual or constructive notice of the alleged condition.

¶ 25     Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2008). In ruling on a motion for summary judgment, the circuit court is to determine whether a genuine issue of material fact exists, not try a question of fact. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). A party opposing a motion for summary judgment "must present a factual basis which would arguably entitle him to a judgment." *Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority*, 172 Ill. 2d 243, 256 (1996). When a court determines whether a genuine issue of material fact exists, the pleadings are to be liberally construed in favor of the nonmoving party. *Williams*, 228 Ill. 2d at 417. "Summary judgment is to be encouraged in the interest of prompt disposition of lawsuits, but as a drastic measure it should be allowed only when a moving party's right to it is clear and free from doubt." *Pyne v. Witmer*, 129 Ill. 2d 351, 358 (1989). Further, "where reasonable persons could draw divergent inferences from the undisputed material facts or where there is a dispute as to a material fact, summary judgment should be denied and the issue decided by the trier of fact." *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 114 (1995). We review summary judgment rulings *de novo*. *Id.* at 113.

¶ 26     In Illinois, a landowner will not be held liable for the failure to remove natural accumulations of snow or ice. *Ziencina v. County of Cook*, 188 Ill. 2d 1, 10-11 (1999). A landowner is not responsible for injuries resulting from a natural accumulation of snow or ice that has been left undisturbed. *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 227 (2010). A defendant cannot be held liable for injuries sustained unless a plaintiff shows that the defendant aggravated a natural condition or that the origin of the accumulation of ice, snow, or water was unnatural. *Branson v. R&L Investment, Inc.*, 196 Ill. App. 3d 1088, 1091 (1990). If the landowner or a hired contractor creates an unnatural accumulation, then liability may attach as a result of failing to use ordinary care. *Id.* The fact that snow has been

-8-

cleared and that there are piles of snow present suggests that the snow piles are an unnatural accumulation. *Krywin,* 238 Ill. 2d at 231-32.

¶ 27 A plaintiff alleging negligence must allege facts establishing that the defendants owed the plaintiff a duty of care, that they breached that duty of care, and that the alleged breach proximately caused the plaintiff's injuries. *Iseberg v. Gross*, 227 Ill. 2d 78, 86-87 (2007). In determining whether a duty existed, we must determine "whether the plaintiff and defendant stood in such a relationship to one another that the law imposes on the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Krywin*, 238 Ill. 2d at 226. Factors involved in a duty analysis are: "(1) the reasonable foreseeability of the injury; (2) the likelihood of the injury; (3) the magnitude of the burden of guarding against the injury; and (4) the consequences of placing the burden on the defendant." *Id*. at 226. Breach and proximate cause are factual matters for the trier of fact to decide, while the question of whether a duty is owed is a question of law for the court. *Iseberg*, 227 Ill. 2d at 87.

¶ 28 When a landowner elects to undertake snow and ice removal, the landowner has the duty to exercise ordinary care in doing so. *Erasmus v. Chicago Housing Authority*, 86 Ill. App. 3d 142, 145 (1980). It is also the duty of the landowner to provide "a reasonably safe means of ingress and egress." *Branson*, 196 Ill. App. 3d at 1092. A party under contract with a landowner to remove snow or ice also bears a duty of reasonable care for the customers on the property. *Madeo v. Tri-Land Properties, Inc.*, 239 Ill. App. 3d 288, 290 (1992). Specifically, snow removal contractors have a duty not to "negligently remove snow by creating or aggravating an unnatural accumulation of snow or ice." *McBride v. Taxman Corp.*, 327 Ill. App. 3d 992, 996 (2002).

¶ 29 This court has held that for a plaintiff to recover in a slip-and-fall case involving ice, snow, or water, the plaintiff must show "that the accumulation of ice, snow or water is due to unnatural causes and that the property owner had actual or constructive knowledge of the condition." *Gilberg v. Toys "R" Us, Inc.*, 126 Ill. App. 3d 554, 557 (1984). To prove constructive notice, a plaintiff must show that the hazardous condition existed for a sufficient amount of time or that, through the exercise of reasonable care, the defendant should have discovered the dangerous condition. *Smolek v. K.W. Landscaping*, 266 Ill. App. 3d 226, 228-29 (1994). However, where a defendant created the condition through its own negligence, a plaintiff does not need to show constructive or actual notice. *Reed v. Wal-Mart Stores, Inc.*, 298 Ill. App. 3d 712, 715 (1998). Notice is generally a question of fact for the jury to decide. *Russell v. Village of Lake Villa*, 335 Ill. App. 3d 990, 997 (2002).

¶ 30 Plaintiff, to survive a motion for summary judgment, must provide sufficient evidence to allow the trier of fact to find defendants accountable for the unnatural accumulation of water, ice, or snow that caused the plaintiff's injuries. *Handy v. Sears, Roebuck & Co.*, 182 Ill. App. 3d 969, 971 (1989). Specifically, the plaintiff must "show that the accumulation was somehow created by defendants or that the property owner had actual or constructive knowledge of the condition." *Bloom v. Bistro Restaurant Ltd. Partnership*, 304 Ill. App. 3d 707, 711-12 (1999). "Plaintiff may rely upon the reasonable inferences which can be drawn from the facts considered on the motion for summary judgment in determining whether a genuine issue of material fact exists." *Gehrman v. Zajac*, 34 Ill. App. 3d 164, 166 (1975). The plaintiff does not have to prove her case during the summary judgment stage of the

proceedings, but she does have to show that the origin of the ice was unnatural or created by defendants. *Branson*, 196 Ill. App. 3d at 1094. Additionally, the cause of the unnatural accumulation or aggravated natural condition must be "identifiable." *Id.*

¶ 31    In this case, after construing the pleadings liberally in favor of Hornacek, the nonmovant, we hold she has presented sufficient evidence to withstand both defendants' motions for summary judgment. *Williams*, 228 Ill. 2d at 417 (when determining whether a genuine issue of material fact exists, the pleadings are to be liberally construed in favor of the nonmoving party). As the landowner, 5th Avenue had a duty to provide a safe means of travel for pedestrians between the parking lot and the office building. *Branson*, 196 Ill. App. 3d at 1092. It is undisputed that 5th Avenue elected to have snow removed from the parking lot, which created an unnatural accumulation. *Erasmus*, 86 Ill. App. 3d at 145. It is also undisputed that Rice performed the snow removal services at the parking lot based on his contract with 5th Avenue. He had the duty to exercise reasonable care in removing snow and ice. *Madeo*, 239 Ill. App. 3d at 290. Hornacek has presented sufficient evidence that ice upon which she allegedly fell was an unnatural accumulation created by Rice. *Eichler v. Pitt Theatres, Inc.*, 167 Ill. App. 3d 685, 692 (1988). Sufficient evidence was presented showing that 5th Avenue had actual or constructive notice of the dangerous condition that Rice allegedly created. We do not see any reason to depart from this court's prior decisions concerning the duty owed by similarly situated landowners and snow removal contractors.

¶ 32    Hornacek's burden at this stage of the proceedings was to present sufficient evidence from which a trier of fact could reasonably find Rice responsible for negligently creating the unnatural accumulation of ice that caused her injuries and that 5th Avenue had actual or constructive knowledge of the unnatural accumulation. *Handy*, 182 Ill. App. 3d at 971; *Bloom*, 304 Ill. App. 3d at 711-12. To support her allegation of negligence based on the unnatural accumulation of ice, in her response to both defendants' motions for summary judgment, Hornacek attached the deposition testimony of David Hampton. David testified there was a "big ice flow" in the parking lot and that on the day of the incident, there were snow piles on the north side of the building. He described how snow would melt from those piles to form the "ice flow," where he found Hornacek after her fall. David's testimony provided a plausible link between the snow piles he observed against the north side of the building and the ice that allegedly caused Hornacek's fall. *Branson*, 196 Ill. App. 3d at 1094 ("A finding of an unnatural or aggravated natural condition must be based upon an identifiable cause of the water accumulation.").

¶ 33    The deposition testimony of Wayne Lawler and Hornacek provided additional support for Hornacek's allegation that the accumulation of snow on the north side of the building was unnatural. Lawler testified that "at times an enormous pile of snow" would be plowed against the north wall of the building. He also stated his belief that during the day the sun would melt the piles of snow next to the building and the resulting water would flow into the parking lot. The water would then freeze at night. He added that on the day of the incident, the parking lot was a "little wet" and that the source of that wetness was melting snow. Hornacek stated that the parking lot had "snow on top of thick–what looked like thicker ice to me, cloudy frozen water." She claimed that after she fell, she was able to feel that she had slipped on invisible ice. Rice admitted that water "always" tended to pool at the north side of the

-10-

building, which was the side where Hornacek fell. He added that after Hornacek's fall, when asked by 5th Avenue to go to the parking lot and spread more ice, he recalled seeing "[a] little bit of snow, a little bit of ice."

¶ 34 Hornacek also provided sufficient evidence from which a trier of fact could conclude that the defendants had notice of the defective condition of the parking lot, sufficient to withstand defendants' respective motions for summary judgment. Hornacek provided the evidence, as discussed above, to prove that Rice created the unnatural accumulation of snow and ice that caused Hornacek to fall and injure herself. Hornacek does not need to show that Rice had either actual or constructive notice where she alleges he created the condition. See *Reed*, 298 Ill. App. 3d at 715 ("a plaintiff does not need to prove actual or constructive notice when she can show the substance was placed on the premises through the defendant's negligence").

¶ 35 Hornacek offered sufficient evidence to support a finding that 5th Avenue had both actual and constructive notice of the condition of the parking lot. Although John Brannen denied receiving any complaints from American Prudential Homes, Hornacek's employer, about Rice's snowplowing, David Hampton testified: "I'm positive that [John Brannen] was aware that we, you know, had an issue with [the snowplowing]." David testified that he spoke to Brannen about the snowplowing the previous winter and recalled asking Brannen "if there could be *** another way to plow those things, to talk to the plow guy because it was just creating a problem." Bonnie Hampton testified that although she could not recall whether she made a specific complaint to 5th Avenue about ice in the parking lot, she did complain to 5th Avenue about the snowplowing method of accumulating snow against the north wall of the building. To show that 5th Avenue had constructive notice, Hornacek relied upon the deposition testimony of David Hampton. David testified that there was almost always ice in the parking lot during the winter months and that during the winter of Hornacek's fall, the ice had been there pretty much all winter. David's testimony is evidence that the snow piles were a problem for at least a year previous, which the fact finder could reasonably conclude is a sufficient amount of time to establish constructive notice. See *Smolek*, 266 Ill. App. 3d at 228-29 ("Generally, if a plaintiff is relying on proof of constructive notice, she must establish that the dangerous condition existed for a sufficient time or was so conspicuous that the defendant should have discovered the condition through the exercise of reasonable care."). Hornacek, in responding to defendants' motions for summary judgment, raised sufficient evidence to allow a trier of fact to conclude that defendants had notice, either actual or constructive, of the defective condition of the parking lot. *Russell*, 335 Ill. App. 3d at 997 (notice is generally a question of fact for the jury to decide).

¶ 36 Plaintiff, Jennifer Hornacek, has raised sufficient evidence to withstand both defendant 5th Avenue's and defendant Rice's respective motions for summary judgement. She has provided evidence from which a trier of fact could reasonably conclude that defendant Rice negligently created the defective condition in the parking lot owned by 5th Avenue that caused her injuries and that 5th Avenue had notice, whether actual or constructive, of the defective condition. The entry of summary judgment in this case was not proper.

¶ 37                                    CONCLUSION

¶ 38          The judgment of the circuit court is reversed.

¶ 39          Reversed and remanded.