2024 IL App (1st) 231652-U

No. 1-23-1652

Order filed August 28, 2024

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| ROSSMID LOPEZ-ARANA, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21 L 362 |
| | ) | |
| BRIAN PROPERTIES, INC.; SALEM PLAZA CENTER II, LLC; SALEM PLAZA CENTER, LLC; and UNKNOWN OWNERS OF 1049-1143 NORTH SALEM DRIVE, SCHAUMBURG, IL, 60194, | ) ) ) ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| (Brian Properties, Inc. and Salem Plaza Center II, LLC, | ) | Honorable |
| Defendants and Third-Party Plaintiffs-Appellees, and | ) | Scott D. McKenna, |
| Jameson Pavement Surfaces, Inc., Third-Party Defendant). | ) | Judge, presiding. |

_____

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Reyes and Justice R. Van Tine concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The defendants, an owner and a manager of a parking lot, were entitled to summary
                   judgment where the evidence plaintiff offered in response to their motion, that the

ice and snow on which plaintiff fell were an unnatural accumulation, was too speculative to create any genuine issue of material fact.

¶ 2    Plaintiff sued defendants, who owned and managed a parking lot, to recover for injuries she sustained when she allegedly stepped on a depression in the parking lot, which had cracked pavement and was covered in ice and snow. The trial court granted summary judgment in favor of defendants, finding that plaintiff failed to raise a genuine issue of material fact because her contention regarding an unnatural accumulation of ice and snow was based on speculation.

¶ 3    On appeal, plaintiff argues that a genuine issue of material fact exists regarding whether the condition of the parking lot either caused or contributed to her fall, or created an unnatural accumulation of ice and snow that caused or contributed to her fall and injuries. She also argues that the circuit court committed reversible error when it relied on an unpublished order as precedent.

¶ 4    For the reasons that follow, we affirm the judgment of the circuit court.[1]

¶ 5                                I. BACKGROUND

¶ 6    In January 2021, plaintiff Rossmid Lopez-Arana brought a four-count complaint alleging negligence against defendants, Brian Properties, Inc. (Brian Properties), Salem Plaza Center II, LLC (Salem Plaza), Salem Plaza Center, LLC,[2] and Unknown Owners of 1049-1143 North Salem Drive, Schaumburg, Illinois. Specifically, plaintiff alleged that defendants owned, maintained and were in the business of leasing and maintaining commercial storefronts located in Schaumburg, Illinois, and had a duty to provide a safe means of ingress and egress for invitees and visitors of

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

[2]In June 2022, the circuit court granted plaintiff's motion to voluntarily dismiss Salem Plaza Center, LLC from this complaint.

their property, including the parking lot and parking spaces. On January 22, 2019, plaintiff walked to her car located in defendants' parking lot, which was covered in ice and snow. Plaintiff alleged that she was caused to step into a hole or depression in the parking lot, causing her to fall and severely injure her left leg and back. She alleged that defendants improperly operated, managed, maintained or controlled the premises, failed to make a reasonable inspection of the premises, failed to warn invitees of the dangerous condition of the parking lot, allowed the parking lot to reach a state of disrepair, allowed snow and ice to accumulate in the parking lot, failed to properly remove snow and ice that obstructed pedestrian traffic, and failed to salt the ice on the parking lot.

¶ 7    In their answer and affirmative defenses, Brian Properties, the manager of the property, and Salem Plaza, the owner of the property, denied plaintiff's allegations of wrongdoing and alleged that plaintiff was comparatively negligent and the condition was open and obvious. Brian Properties and Salem Plaza also filed a third-party complaint for contribution against Jameson Pavement Surfaces, Inc. (Jameson), alleging that Brian Properties, as the agent for Salem Plaza, contracted with Jameson for the removal of snow and ice from the premises, but Jameson failed to keep the premises clean and free from snow and ice, caused or permitted the premises to be in a dangerous condition, or caused or permitted an unnatural accumulation of snow and ice to form on the premises.

¶ 8    Thereafter, Brian Properties and Salem Plaza moved for summary judgment, arguing that they did not owe plaintiff a duty to exercise reasonable care to protect her from slipping and falling on the naturally occurring snow, sleet or ice that had settled in the parking lot while that precipitation was actively falling.

¶ 9    Plaintiff's response disputed defendant's arguments and also argued that they failed to address her allegations, as supported by her complaint, deposition testimony, and photographic evidence, that they had allowed the parking lot to reach a state of disrepair with depressions and cracks that caused her to step into a depression covered in snow and ice and fall, resulting in serious injuries. Plaintiff argued that a question of fact existed concerning whether the condition of the parking lot caused or contributed to her fall. She further argued that a question of fact existed concerning whether the condition of the parking lot caused the unnatural accumulation of ice and snow in certain areas, posing a hazard to plaintiff and other patrons at the commercial property.

¶ 10    Brian Properties and Salem Plaza replied that plaintiff failed to show that she fell on anything other than a natural accumulation of ice or snow because the surface cracks in the parking lot did not establish that the accumulated ice and snow were unnatural. Brian Properties and Salem Plaza argued that no evidence showed that any cracks or holes in the parking lot caused water to pool or ice to form in the specific spot where plaintiff fell.

¶ 11    According to the evidence submitted in support of and in opposition to summary judgment, plaintiff testified that on January 22, 2019, she was visiting a client, a grocery store, at the property in question to install computer equipment. It was cold, raining, sleeting, and snowing when she left her residence for work at 8 a.m. and arrived at the grocery store sometime after 10 a.m. Initially, plaintiff testified that the parking lot did not appear to be shoveled or plowed, but "you could see, like, extended traces, or marks, as if they had put salt on there, but there was snow in between the parking lots." Later, she clarified that "it seemed as if they had cleaned the main" part of the parking lot "where the cars transit in the parking lot." She thought that about three inches of snow had fallen that morning. She parked in a parking space that faced the grocery store and was next

to a vehicle parked in a handicap parking space. She could not see the yellow lines marking the parking spaces or the pavement under the snow.

¶ 12    Plaintiff was inside the store for about two hours installing equipment and software. Then, she needed to return to her car to obtain additional equipment from the trunk. The weather was very cold and actively sleeting as she walked to her car trunk. The parking lot did not appear to have been plowed or shoveled. She saw a depression in the snow on the ground, which caused her to be cautious and look at the ground. She tried twice to avoid the depression but could not step over it because it was "in different places." She walked between the passenger side of her car and the car parked in the handicap parking spot. She held onto both cars but slipped and fell. She did not examine the depression or investigate the reason why she fell. She testified that the parking lot was improperly maintained because it was not cleaned in between the cars and "[t]here was frozen ice with snow accumulated on it." At her deposition, the following exchange occurred.

"Q: Ms. Arana, did you slip on the ice as a result of the ice accumulating in the depression in the parking lot?

A: I think that I did slip, that the depression caused the rise that I slipped, but also because I was trapped in the ice, and it makes—made happen what happened."

After she fell, she could not get up. She yelled out in pain and eventually workers in the nearby businesses helped her. She remained on the ground until an ambulance arrived to assist her. She fainted and awoke in the hospital. She sustained a spiral displaced fracture of the tibia and fibula.

¶ 13    After the accident, plaintiff returned to the parking lot in October and November of 2019 and took photographs of the parking lot and the location of her fall. She testified that the photographs showed the "cracks that were on the pavement that—they froze. They froze on the

day I fell." Initially, she testified that when she fell, she could see the ice under the accumulated snow, but could not see the depression or the cracks with ice where she fell because she was not able to see the pavement. She did not know how long that ice had been present. Later, she testified that she was not able to observe the pavement where she fell because she was only able to see the snow. The photographs depict asphalt pavement with large cracks across several parking spaces, including the one plaintiff parked in on the date in question. Some photographs depict the asphalt pavement with large depressions and loose asphalt at some locations. Plaintiff never measured any depression in the parking lot where she fell. Plaintiff had lived in the Chicagoland area for 14 years prior to her fall and was aware that freezing rain, snow, and slush can make surfaces slick and dangerous.

¶ 14    William Dooley was employed by Brian Properties since 2006 and was the manager assigned to Salem Plaza since 2010. He testified that he did not know when the parking lot at issue was last repaved or resurfaced. His duties included visiting properties and performing inspections. However, there was no procedure or checklist for inspecting the properties, nor a requirement to inspect any property on a regular basis. There was no record of any inspections performed at Salem Plaza. If contractors were hired to repair the asphalt parking lot at issue, then Brian Properties would have invoices for those work orders. Dooley testified that Brian Properties was responsible for maintaining the parking lot and for the snow removal and treatment of the parking lot. When Dooley viewed a photograph taken by plaintiff of the location of her fall, he testified that he would have arranged to have the cracks repaired or resealed. He testified that the cracks in the photographs could get bigger, ice and snow could accumulate, and water could freeze in the cracks.

¶ 15    In August 2023, the circuit court issued a written decision that granted summary judgment in favor of Brian Properties and Salem Plaza. The court stated that plaintiff, though not expected to prove her case at this point, failed to present facts showing a causal link to her injury from the cracked condition of the parking lot surface where she fell. Specifically, the court found that no evidence in the record supported a theory that the cracks at issue caused any of the snow or ice to accumulate or develop unnaturally, and plaintiff's contentions of unnatural accumulation were based only on speculation. According to the circuit court, that speculation and the photographs of the parking lot where plaintiff fell were not enough to raise a genuine issue of material fact as to whether the ice was created by the unnatural accumulation of snow, especially since plaintiff admitted that it was snowing and the parking lot was covered by approximately three inches of snow. The court wrote: "It is simply patent that it would be slippery in this weather even without the existence of cracks, and it is highly likely that this natural accumulation resulted in Plaintiff's slip and unfortunate injury." The court also summarily dismissed the third party claim against Jameson as moot. Further, the court made a finding under Illinois Supreme Rule 304(a) (eff. March 8, 2016) that there was no just reason to delay enforcement or appeal of its order, to the extent any viable defendants remained in this case.

¶ 16    Plaintiff appealed.

¶ 17                                II. ANALYSIS

¶ 18    Summary judgment is a drastic means of disposing of litigation and should be entered only when the right of the moving party is clear and free from doubt. *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 518 (1993). A defendant moving for summary judgment may meet the initial burden of production by either affirmatively showing that some element of the case must be

resolved in defendant's favor, or by showing the absence of evidence supporting the plaintiff's position on one or more elements of the cause of action. *Hutchcraft v. Independent Mechanical Industries, Inc.*, 312 Ill. App. 3d 351, 355 (2000). The plaintiff is not required to prove her case at the summary judgment stage; in order to survive a motion for summary judgment, she must present a factual basis that would arguably entitle her to a judgment. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 335 (2002). "Although a plaintiff may rely on reasonable inferences which may be drawn from the facts considered on a motion for summary judgment, an inference cannot be established on mere speculation, guess or conjecture." *Salinas v. Werton*, 161 Ill. App. 3d 510, 515 (1987).

¶ 19    Summary judgment is only appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020). The court must construe these documents and exhibits strictly against the moving party and liberally in favor of the nonmoving party. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). The court may draw reasonable inferences from the undisputed facts, but where reasonable persons could draw divergent inferences from the undisputed facts, the issue should be decided by a trier of fact and the motion for summary judgment denied. *Siegel v. Village of Wilmette*, 324 Ill. App. 3d 903, 907 (2001); *Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 271-72 (1992). We review a circuit court's grant of summary judgment *de novo*. *Home Insurance Co.*, 213 Ill. 2d at 315. That is, we perform the same analysis as a circuit court and may make our decision on any basis in the record, regardless of whether the circuit court relied on that basis. *Guterman Partners Energy, LLC v. Bridgeview Bank Group*, 2018 IL App (1st) 172196, ¶¶ 48-49.

¶ 20   "In a negligence action, the plaintiff must plead and prove the existence of a duty owed by the defendant, a breach of that duty, and injury proximately resulting from that breach." *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 12. Regarding the liability of a landowner for a plaintiff's fall on snow or ice, our supreme court has stated that

"the general rule in Illinois historically has been that under the common law, a landowner owes no duty to remove natural accumulations of snow and ice. [Citations.] The rule recognizes that to hold otherwise would create an unreasonable burden of vigilance when considering that snowstorms cannot be foreseen or controlled and recognizes the climatic vagaries of this area with its unpredictable snowfalls and frequent temperature changes. [Citations and internal quotation marks omitted.]

However, landowners do owe a duty of reasonable care to prevent unnatural accumulations of ice and snow on their premises where they have actual or constructive knowledge of the dangerous condition. [Citation.] Thus, liability may arise where snow or ice 'accumulated by artificial causes or in an unnatural way or by a defendant's own use of the area concerned and creation of the condition, and where it has been there long enough to charge the responsible party with notice and knowledge of the dangerous condition.' *Fitzsimons v. National Tea Co.,* 29 Ill. App. 2d 306, 318 (1961).

Various theories of liability for falls on an unnatural accumulation of ice have been recognized, including (1) a defective condition or negligent maintenance of the premises and (2) a voluntary undertaking theory. [Citation.] Under the negligent maintenance cases, courts recognize that the construction and maintenance of landowners' premises are matters within their control. Therefore, to hold them to a duty of reasonable care under

these circumstances does not impose an undue burden on them not to 'add to the difficulties facing Illinois residents from natural accumulations of ice and snow by permitting unnatural accumulations due to defective construction or improper or insufficient maintenance of the premises.' *Bloom v. Bistro Restaurant Ltd. Partnership*, 304 Ill. App. 3d 707, 711 (1999)." *Murphy-Hylton v. Lieberman Management Services, Inc.*, 2016 IL 120394, ¶¶ 19-21.

Here, we address the first theory of liability. To prevail on a claim of negligence based on an unnatural accumulation, a plaintiff must prove (1) the accumulation of snow or ice was unnatural, and (2) the landowner had actual or constructive knowledge of the dangerous condition. *Jordon v. Kroger Co.*, 2018 IL App (1st) 180582, ¶ 18. Because "[a] finding of an unnatural *** condition must be based upon an identifiable cause of the ice formation," a plaintiff is required to present "some facts to show the origin of the ice was unnatural." *Gilberg v. Toys R Us, Inc.*, 126 Ill. App. 3d 554, 557-58 (1984).

¶ 21    Plaintiff argues that, based on her testimony, her photographs of the parking lot, and the testimony of property manager Dooley, she presented some facts to show that the ice she fell on was caused by the cracked condition of the pavement of the parking lot, which created or contributed to an unnatural accumulation of ice and snow that caused or contributed to plaintiff's fall and subsequent injuries. Specifically, plaintiff argues that Brian Properties and Salem Plaza failed to maintain the parking lot by filling and sealing the cracks.

¶ 22    Defendants Brian Properties and Salem Plaza respond that the deposition testimony and photographs, without more, are too speculative to create a genuine issue of material fact as to whether the ice plaintiff slipped on was an unnatural accumulation because the weather was very

cold and actively sleeting when plaintiff fell, three inches of snow had fallen that morning and the parking lot was not plowed or shoveled, and the depth of any alleged depression in the pavement was never measured or investigated. Defendants argue that plaintiff offered neither testimony indicating that the snow or ice in question was anything other than freshly arrived onto the pavement nor evidence showing that the cracks could have contributed to an unnatural accumulation of ice and snow.

¶ 23    Based upon our review of the record, we conclude that plaintiff did not present sufficient evidence to create a genuine issue of material fact that the ice and snow upon which she fell were an unnatural accumulation that was caused by the cracked condition of the surface of the parking lot. *Cf.*, *Lapidus v. Hahn*, 115 Ill. App. 3d 795, 800-01 (1983) (where water regularly dripped from the roof at the location of the fall and accumulated in a depression there, and there was no snow or ice elsewhere, a jury could reasonably conclude that a defective condition of the premises caused the icy accumulation); *McCann v. Bethesda Hospital*, 80 Ill. App. 3d 544, 550-01 (1970) (the owner of a parking lot owed the plaintiff a duty where the slope of the lot caused or aggravated the formation of water or ice in the spot where the plaintiff fell). Plaintiff provided no actual evidence that the origin of the ice was unnatural or that the cracks in the pavement contributed to her fall. Contrary to plaintiff's argument in her reply brief, she never testified that she stepped into a hole that caused her foot to get stuck, leading her to fall. There was evidence of three inches of freshly fallen snow and active sleeting, which, if it had caused the ice to form and plaintiff to fall, would have been the kind of natural accumulation for which landlords are not liable.

¶ 24    Because any ice that formed could have been a result of that recent precipitation, this possibility means that the court cannot draw an inference that the ice upon which plaintiff fell must

have been caused by sleet or melting snow settling into the pavement cracks. *Cf.*, *Mickens v. CPS Chicago Parking, LLC*, 2019 IL App (1st) 180156, ¶ 42 (genuine issue of material fact existed as to unnatural accumulation where snow was removed, the ice the plaintiff fell on was on a sloped ramp, temperatures fluctuated in the days preceding the fall, there was no intervening precipitation, and there were snow piles immediately above the ramp). Although plaintiff testified that she saw a depression in the snow as she approached her car and presented photographs, taken several months after her fall, of cracks in the parking lot surface unconcealed by any snow or ice, there was no evidence that the cracked condition of the parking lot surface caused water to pool or ice to form in the spot where she fell. Plaintiff's speculation that the cracked pavement caused an unnatural accumulation of ice and snow, especially when examined in the context of her testimony that she never saw the pavement underneath the snow where she fell or what caused her fall, is not enough to create a factual issue.

¶ 25    Plaintiff's speculation that the ice on which she fell formed as the result of the underlying condition of the parking lot is insufficient to survive summary judgment. Because plaintiff failed to establish the existence of a genuine issue of material fact on this point, the circuit court correctly granted summary judgment to Brian Properties and Salem Plaza.

¶ 26    Finally, plaintiff argues that the circuit court erroneously reached its decision granting summary judgment in favor of Brian Properties and Salem Plaza by improperly relying on *Walker v. Wilson*, 2018 IL App (2d) 170754-U, as precedent and not under the limited circumstances allowed under Illinois Supreme Court Rule 23(e)(1) (eff. Feb. 1, 2023). Plaintiff correctly states that *Walker* (1) was not precedential because it was not used to support contentions of double jeopardy, *res judicata*, collateral estoppel or law of the case, and (2) was not persuasive authority

because it was entered before January 1, 2021. See Ill. S. Ct. R. 23(e)(1) (eff. Feb. 1, 2023). Nevertheless, the circuit court's citation to *Walker* does not constitute reversible error because our review of the court's order granting summary judgment is *de novo* and we may make our decision on any basis in the record, regardless of whether the trial court relied on that basis. See *Home Insurance Co.*, 213 Ill. 2d at 315; *Guterman Partners Energy, LLC*, 2018 IL App (1st) 172196, ¶¶ 48-49.

¶ 27                                    III. CONCLUSION

¶ 28     For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 29     Affirmed.