2025 IL App (2d) 250004-U
No. 2-25-0004
Order filed December 17, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| LORI LEE, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 22-L-43 |
| | ) | |
| ROCK CORNER MARATHON a/k/a | ) | |
| Marathon Gas Rock Corner and | ) | |
| BEDROCK MANAGEMENT INC., | ) | Honorable |
| | ) | Charles W. Smith, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices McLaren and Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*: Summary judgment on plaintiff's premises liability claims was proper because there was insufficient evidence to create a question of fact as to whether her slip and fall was caused by an unnatural accumulation of snow and ice.

¶ 2    Plaintiff, Lori Lee, sued defendants, Rock Corner Marathon and Bedrock Management, Inc., alleging negligence and premises liability after she slipped and fell while walking her dog on the premises of a gas station owned and operated by defendants. The trial court granted defendants' motions *in limine* to bar plaintiff's expert and for summary judgment. Plaintiff appeals from these orders. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On January 2, 2022, plaintiff and her husband were driving from a friend's house in Arlington Heights to their home in Sheboygan, Wisconsin. On the way, they picked up their dog, a 12-pound Yorkie, from a boarding facility and, about 20 minutes later, stopped for gas at a Marathon gas station in Fox Lake owned and operated by defendants. While plaintiff's husband was filling the car with gas, plaintiff walked the dog around the gas station. It had begun snowing at noon on January 1, 2022, and continued until 10 a.m. on January 2, 2022. The gas station had been plowed earlier that morning. At some point, plaintiff slipped, fell, and broke her left femur. Plaintiff's husband went to her aid, and the gas station attendant called paramedics. Surveillance video of plaintiff's fall shows that the area had been plowed but that a light layer of snow remained on the ground in some areas of the gas station.

¶ 5     On January 27, 2022, plaintiff filed a complaint alleging claims against each defendant under theories of premises liability and negligence. Plaintiff alleged that defendants had a duty to maintain its premises in a reasonably safe condition, breached that duty by failing to keep the premises free of slipping hazards and creating a condition that caused an unnatural accumulation of ice to exist on the premises, and had actual and constructive notice of the unnaturally created ice. Plaintiff further alleged that, as a direct and proximate cause of defendants' conduct, she slipped and fell and was injured. Defendants filed an answer denying the allegations, and the matter proceeded to discovery.

¶ 6     In her deposition, plaintiff testified that it began snowing on January 1, 2022, and continued through the morning of January 2, 2022. When she and her husband stopped at the gas station on the way home, she walked her dog around the parking lot while her husband filled the car with gas. Although the parking lot had been plowed, some snow remained on the ground, but she

acknowledged that certain areas of the parking lot were clear. Prior to her fall, she did not recall the parking lot being slippery. Her husband did not see her fall but heard her scream afterward. Plaintiff walked her dog both on areas that were clear of snow and through areas with snow. She believed she slipped on a combination of snow and ice. Surveillance footage showed that plaintiff fell where the pavement was covered by a light layer of snow.

¶ 7        Daniel Lee, plaintiff's husband, testified that plaintiff slipped at about noon. He stated that, when they stopped for gas while traveling with their dog, it was typical for plaintiff to walk the dog while he filled the car with gas. Plaintiff was wearing a winter coat and snow boots. He described the weather as very cold and sunny, and testified that it had snowed, sleeted, and rained; he also recalled that his windshield wipers were stuck to the windshield. When he pulled into the gas station, there was snow on the pavement, but he could not tell whether there was ice beneath the snow. At the gas pumps, the ground was clear because the area was covered, but he testified that the remainder of the parking lot was a sheet of ice covered with snow. He did not know how long the snow and ice had been present. He did not see plaintiff walking the dog because his back was to her, and he turned toward her only after he heard her scream and she had already fallen. Because of the snow cover, he did not recall exactly where she fell, but he remembered that the area where she fell was covered with snow and ice. Approximately three days after the incident, he returned to the gas station, took a photograph of the area where he believed plaintiff fell, marked the photograph with an "X," and the photograph was admitted as Plaintiff's Exhibit No. 3.

¶ 8        William Adams testified that he was the sole owner of Bedrock Management, which owned several gas stations, including the gas station where plaintiff slipped. He testified that Michael Ruggles, his father and an employee, was responsible for snow removal at the gas station on the day of plaintiff's fall. Adams and Ruggles had approximately 20 years of snow-plowing

experience and used their best judgment to determine when plowing was necessary. Ruggles has since passed away. Adams believed the gas station was plowed at approximately 4 or 5 a.m. on January 2, 2022, and testified that crosswalks and sidewalks would have been hand shoveled and salted. Ruggles was typically at the gas station multiple times each day, and employees could contact him for assistance at any time. Adams was not present at the gas station on the day of the incident, but he reviewed the surveillance video of plaintiff's fall. He testified that there was snow on the ground in the area where plaintiff fell, but he did not know whether ice was present.

¶ 9 On March 4, 2024, defendants filed a motion for summary judgment, arguing that they had no duty to remove natural accumulations of ice and snow and that there was no evidence that the snow and ice on which plaintiff slipped was anything other than a natural accumulation. Defendants further argued that they had no duty to warn customers of the ice and snow and that they did not fail to maintain, supervise, or inspect the premises.

¶ 10 Thereafter, although the deadline to file Illinois Supreme Court Rule 213(f) (eff. Jan. 1, 2018) disclosures had passed, plaintiff filed a motion for leave to disclose a Rule 213(f)(3) liability expert. The trial court granted the motion and set a schedule for the expert's disclosure and deposition. Plaintiff disclosed David Schroeder as her expert, and he produced an initial report on March 25, 2024. In that report, Schroeder cited various code violations related to the icy walking surface and opined that, in the area where plaintiff slipped, the concrete contained a concavity in which ice accumulated unnaturally because runoff from the gas station roof drained directly onto it. He further noted that weather records showed precipitation on multiple days preceding the fall and that, during the seven days before the incident, the temperatures fluctuated above and below freezing, causing any accumulation to melt and refreeze. Schroeder opined that the only area of the parking lot with ice on it was the location where plaintiff slipped.

¶ 11    On May 2, 2024, the trial court granted plaintiff's motion to allow Schroeder to perform a site inspection, as he had submitted his initial report without visiting the scene. Schroeder subsequently filed supplemental reports on May 13 and May 25, 2024. In the revised reports, he stated that he poured two gallons of water into the area where he believed plaintiff slipped, which revealed a concavity approximately two and a half feet in diameter. He opined that the minimum slope for drainage was one-quarter inch per foot and that the area near the concavity was flat. He withdrew his prior opinion that the building's roof drained onto the concavity, acknowledging during the site visit that this theory was invalid. Schroeder's May 25th revised report corrected the temperature record, indicating that temperatures fluctuated above and below freezing for six of the seven days preceding plaintiff's fall, rather than all seven days as stated in the two prior reports.

¶ 12    In his deposition on May 28, 2024, Schroeder testified that he was an architect. He admitted that he had not conducted a site visit before submitting his initial report and, after conducting a site visit, withdrew his prior opinion that the building's roof drained onto the pavement near the location of plaintiff's fall. He testified consistently with his written report. Schroeder acknowledged that the surveillance video showed the entire parking lot covered with snow, preventing him from seeing underneath. He opined that the only area covered with ice was where plaintiff slipped, but admitted this conflicted with Daniel Lee's testimony that the entire lot was covered with snow and ice. Schroeder explained that the ice where plaintiff slipped was caused by a concavity in the pavement and an improper slope. He never measured the depth of the concavity and stated that, without it, water would have drained and not refrozen. He identified Plaintiff's Exhibit No. 9, a photograph taken after he poured water on the concrete near the estimated location of plaintiff's fall, but he could not identify where he first poured the water or

the exact location of plaintiff's foot when she began to slip. He further testified that he determined the fall location by reviewing the surveillance footage and "knew the approximate area from that." He was not able to determine the exact location of her fall because the surveillance camera had an extremely wide-angle lens. Thus, his determination of where she fell was an estimate and not based on an actual scientific determination.

¶ 13 Plaintiff filed a response to defendants' motion for summary judgment, arguing that Schroeder's opinions were sufficient to raise a question of fact as to defendant's liability and that summary judgment was therefore inappropriate.

¶ 14 At the start of the hearing on the motion for summary judgment, defendants orally moved to file a motion *in limine* to bar Schroeder from testifying, and the trial court granted that request. Plaintiff subsequently filed a motion to reconsider and a motion for leave to file an amended complaint; however, she did not provide a copy of the proposed amended complaint with the motion. The trial court denied the motion to reconsider and denied the motion to file an amended complaint without prejudice because the proposed amended pleading was not attached.

¶ 15 On August 12, 2024, defendants filed a written motion *in limine* to bar Schroeder's expert testimony, arguing that his opinions were speculative and conjectural. For example, Schroeder opined that the only area with ice was where plaintiff slipped because, if ice existed elsewhere, she would have slipped sooner. This opinion, however, conflicted with Dan Lee's testimony that the entire parking lot was ice covered with snow. Additionally, Schroeder never conducted any scientific evaluation to determine the precise location of plaintiff's fall, yet he disagreed with the location identified by plaintiff's husband.

¶ 16 On December 2, 2024, plaintiff filed a proposed amended complaint without leave of court. In the amended complaint, she alleged that she slipped on an unnatural accumulation of ice in a

concavity at the gas station. Notably, although Schroeder identified alleged violations of various codes and standards in his expert reports,[1] plaintiff did not include any allegations regarding these violations as a basis for liability in either the original or amended complaint.

¶ 17    The following day, the trial court held a hearing on defendants' motions *in limine* and for summary judgment. After the hearing, the trial court granted both motions. Schroeder's expert testimony was barred on the grounds that it would not be helpful to the court or jury. The trial court noted that Schroeder disagreed with plaintiff's husband regarding the location of plaintiff's fall, had not interviewed plaintiff, her husband, or the paramedics to determine the fall location, and that his reports had been inconsistent. The trial court granted summary judgment because there was no evidence that plaintiff's fall was caused by anything other than a natural accumulation of snow and ice. The trial court struck plaintiff's amended complaint because it was filed without leave of court, but allowed it to remain in the record. This timely appeal followed.

¶ 18                                    II. ANALYSIS

¶ 19    On appeal, plaintiff argues that the trial court erred in barring her expert and granting summary judgment in favor of defendants. She emphasized that Schroeder opined that the area of the gas station where she fell had a concavity and was inadequately sloped for proper drainage, resulting in an unnatural accumulation of ice. She further contends that Schroeder's testimony demonstrated that defendants had actual or constructive notice of this condition. Accordingly, she asserts that the trial court's exclusion of her expert was unduly prejudicial because Schroeder's opinions were sufficient to overcome summary judgment. We need not address whether the trial

---

[1]In his reports, Schroeder opined that the existence of ice on the ground at the gas station violated provisions of the American Society for Testing and Materials International's *Standard Practice for Safe Walking Surfaces*, the International Property Maintenance Code's requirements for sidewalks and driveways, and the National Fire Protection Association's *Lifesafety Code*.

court erred in barring Schroeder's testimony because, even considering his expert opinions, summary judgment was still appropriate.

¶ 20   Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2022).

> "A defendant moving for summary judgment bears the initial burden of coming forward with competent evidentiary material, which if uncontradicted, entitles him to judgment as a matter of law. [Citation.] A defendant does not need to prove its case or disprove its opponent's case in order to prevail on its motion. A plaintiff, however, must come forth with some evidence that arguably would entitle him to recover at trial in order to survive such a motion. [Citation.]" (Internal quotation marks omitted.) *Caburnay v. Norwegian American Hospital*, 2011 IL App (1st) 101740, ¶ 30.

¶ 21   Summary judgment is a drastic measure and should be granted only if the movant's right to judgment is clear and free from doubt. *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986). Thus, summary judgment should be denied when a reasonable person could draw divergent inferences from undisputed facts. *Pyne v. Witmer*, 129 Ill. 2d 351, 358 (1989). A reviewing court's function is to determine whether a genuine issue of fact was raised and, if none was raised, whether judgment was proper as a matter of law. *American Family Mutual Insurance Co. v. Page*, 366 Ill. App. 3d 1112, 1115 (2006). In doing so, we construe the evidence strictly against the movant and in the light most favorable to the nonmovant. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113 (1995). We review *de novo* the entry of summary judgment. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 22     Generally, landowners owe no duty to remove natural accumulations of ice, water, or snow from their property. *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 227 (2010). Natural accumulations are "caused by the mere falling and settling of snow or precipitation." *Mickens v. CPS Chicago Parking, LLC*, 2019 IL App (1st) 180156, ¶ 26. A landowner may, however, be held liable for an injury caused by an unnatural accumulation of snow or ice. *Id.* ¶¶ 28-29. Various theories of liability for an unnatural accumulation have been recognized. One theory arises when snow or ice builds up due to artificial or unnatural causes and the defendant is responsible for the unnatural accumulation based on a defective condition or negligent maintenance of the premises. *Lopez-Arana v. Brian Properties, Inc.*, 2024 IL App (1st) 231652, ¶ 19. Our supreme court explained:

> "Under the negligent maintenance cases, courts recognize that the construction and maintenance of landowners' premises are matters within their control. Therefore, to hold them to a duty of reasonable care under the circumstances does not impose an undue burden on them not to 'add to the difficulties facing Illinois residents from natural accumulations of ice and snow by permitting unnatural accumulations due to defective construction or improper or insufficient maintenance of the premises.' " *Murphy-Hylton v. Lieberman Management Services, Inc.*, 2016 IL 120394, ¶ 21 (quoting *Bloom v. Bistro Restaurant Ltd. Partnership*, 304 Ill. App. 3d 707, 711 (1999)).

"To prevail on a claim of negligence based on an unnatural accumulation, a plaintiff must prove (1) the accumulation of snow or ice was unnatural and (2) the landowner had actual or constructive knowledge of the dangerous condition." *Lopez-Arana*, 2024 IL App (1st) 231652, ¶ 19.

¶ 23     In the present case, plaintiff argues that Schroeder's opinions created a question of fact about whether she slipped on an unnatural accumulation of ice due to the alleged improper slope

and concavity in the pavement where she fell. We disagree. "A finding of an unnatural or aggravated natural condition must be based on an identifiable cause of the ice formation." *Gilberg v. Toys R. Us, Inc.*, 126 Ill. App. 3d 554 557-58 (citing, in part, *Lapidus v. Hahn*, 115 Ill. App. 3d 795, 800-01 (1983) (leaky roof caused water to accumulate in a depression at front door of apartment building); *McCann v. Bethesda Hospital*, 80 Ill. App. 3d 544, 550-51 (1979) (excessive slope allowed water to drain toward level area where plaintiff slipped on ice); *Fitzsimmons v. National Tea Co.*, 29 Ill. App. 2d 306, 311 (1961) (snow plowed into piles on east end of parking lot drained toward west end and refroze where plaintiff fell)). Here, assuming for the sake of argument that plaintiff slipped on ice in the alleged concavity, there was no evidence that the water that accumulated and froze was anything other than a natural accumulation. The concavity merely permitted the natural accumulation of ice and snow. Although Schroeder maintained that an improper slope prevented drainage, he withdrew his opinion that the nearby roof leaked water onto the pavement near the concavity, and there was no other evidence that any condition of the premises caused water to drain into the concavity. Given the evidence of fluctuating temperatures and snowfall on the days preceding the incident, the ice on the pavement constituted a natural accumulation for which landowners are not liable. See *Swagler v. Resurrection Ambulatory Services*, 2014 IL App (1st) 140155-U, ¶ 32 (where there was no evidence that water was unnaturally caused to flow to a depression as opposed to it merely falling from the sky, court held that "water accumulat[ing] in a depression is not, without more, evidence that the accumulation was unnatural")[2]; see also *Rush v. Simon & Mazian, Inc.*, 159 Ill. App. 3d 1081, 1084 (1987)

---

[2]This court may rely on the reasoning in a nonprecedential decision because nothing in the language of Illinois Supreme Court Rule 23(e) prevents a court from doing so. *In re Estate of LaPlume*, 2014 IL App (2d) 130945, ¶¶ 23-24; see also *People ex rel. Webb v. Wortham*, 2018 IL App (2d) 170445, ¶ 27 (Illinois Supreme Court Rule 23(e)(1) (eff. Apr. 1, 2018) states that parties may not cite nonprecedential orders

(plaintiff failed to show accumulation was unnatural where he did not identify how the ice was formed or present evidence as to the cause of the alleged depression).

¶ 24    Moreover, the assertion that plaintiff slipped at the location of the concavity is merely speculation. It is well settled that mere guesswork or speculation is insufficient to create a genuine issue of material fact to survive a motion for summary judgment. *Judge-Zeit v. General Parking Corp.*, 376 Ill. App. 3d 573, 584 (2007). In her deposition, plaintiff made no mention of a concavity or a depression in the pavement where she slipped, stating only that she slipped due to a combination of snow and ice. Further, Schroeder's opinion, that the only place there was ice in the parking lot was in the concavity, was based on his personal belief that, if ice existed elsewhere, plaintiff would have slipped sooner. This directly conflicts with plaintiff's husband's deposition testimony that the entire lot was a sheet of ice covered in snow. Further, while Schroeder poured water near the area where he believed plaintiff fell and revealed a concavity, this location did not correspond to the spot identified by plaintiff's husband as the location of her fall. In fact, Schroeder admitted in his deposition that he could not identify the exact location of plaintiff's foot at the time of her slip, and his determination that it was in the concavity was only an estimate. Accordingly, the claim that plaintiff slipped due to ice in the concavity is speculative and cannot serve as a basis to deny summary judgment. See *Crane v. Triangle Plaza, Inc.*, 228 Ill. App. 3d 325, 331 (1992) (plaintiff's statement that she was 99.99% sure that the ice she slipped on formed from unnaturally accumulated snow was insufficient to raise a genuine question of fact); see also *Koziol v. Hayden*, 309 Ill. App. 3d 472, 478 (1999) (summary judgment appropriate where plaintiff failed to establish that the ice in a depression caused his fall, as he could not show he slipped at that location).

except for limited purposes, but that rule does not bind courts).

¶ 25 Further, in addition to failing to show that the ice was an unnatural accumulation, plaintiff failed to present sufficient evidence to create a genuine issue of material fact that defendants had actual or constructive knowledge of the condition. Actual notice may be established when previous complaints have been made to the owner, or prior accidents or near misses have occurred. See *Bloom*, 304 Ill. App. 3d at 712; *Sullivan-Coughlin v. Palos Country Club, Inc.*, 349 Ill. App. 3d 553, 559 (2004); see also *Hornacek v. 5th Ave. Property Management*, 2011 IL App (1st) 103502, ¶¶ 35-36. "In order to establish constructive notice, time 'is a material factor,' and it is incumbent upon plaintiff to establish that the defect was present for a sufficiently long time to constitute constructive notice to the [defendant]." *Milevski v. Ingalls Memorial Hospital*, 2018 IL App (1st) 172898, ¶ 30 (quoting *Tomczak v. Planetsphere, Inc.*, 315 Ill. App. 3d 1033, 1040 (2000)). Generally, notice is a question of fact for a jury to decide. *Coultas v. City of Winchester*, 208 Ill. App. 3d 238, 240-41 (1991). However, in reviewing a grant of summary judgment, we must determine whether plaintiff presented sufficient evidence to create a genuine question of fact. *American Family*, 366 Ill. App. 3d at 1115.

¶ 26 Here, plaintiff failed to present sufficient evidence to create a question of fact as to actual or constructive notice. Both plaintiff and her husband testified that the area where she fell was ice covered by snow, and the surveillance video corroborated the presence of snow. Thus, it is undisputed that the ice was not visible and that defendants could not have seen it. No evidence showed that anyone else had slipped in the area on the day in question or on any prior occasion, nor that anyone had ever complained of ice buildup there, defeating any claim of actual notice. Likewise, no evidence supported constructive notice. Nothing indicated that defendants were aware of the ice or the underlying concavity, which was detected only when Schroeder poured water on the spot. Nor was there evidence that defendants knew the concavity created a hazard in

freezing temperatures. Although Schroeder opined that the concavity had existed since the pavement's installation, there was no evidence regarding when that installation occurred, whether water regularly accumulated there, whether the spot routinely became icy under similar weather conditions, or how long the ice at issue had been present.

¶ 27 In sum, we need not address whether the trial court erred in barring Schroeder's expert opinions because, even if those opinions were considered, summary judgment was still proper. Plaintiff failed to present evidence showing that the ice on which she slipped was anything other than a natural accumulation and her claim that she fell on ice in a concavity is purely speculative. Moreover, plaintiff offered no evidence that defendants had actual or constructive notice of the condition. Because plaintiff failed to raise a genuine issue of material fact on either the unnatural accumulation or notice elements of a premises liability claim, the trial court properly granted summary judgment in favor of defendants.

¶ 28                                III. CONCLUSION

¶ 29 For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 30 Affirmed.