2026 IL App (1st) 242303-U

FIRST DISTRICT,
SIXTH DIVISION
March 13, 2026

No. 1-24-2303

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| VICTORIA GELFOND-RASKIN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County, Illinois. |
| | ) | |
| v. | ) | |
| | ) | |
| MAGGIE FOLEY, BRIAN PROPERTIES, INC., | ) | |
| and GROVE COURT, LLC, | ) | |
| | ) | No. 2022L003560 |
| Defendants-Appellees, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| VIAMAX INTERNATIONAL, | ) | The Honorable |
| | ) | Michael F. Otto, |
| Defendant. | ) | Judge Presiding. |

_____

JUSTICE GAMRATH delivered the judgment of the court.
Presiding Justice C.A. Walker and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1   *Held*: We affirm the summary judgment for defendants on plaintiff's negligence claim because she failed to establish a causal nexus between an unnatural accumulation of ice and snow and her slip and fall, and her expert's opinion was speculative and properly stricken.

¶ 2     Plaintiff Victoria Gelfond-Raskin was injured after she slipped and fell in the parking lot of a strip mall the afternoon of December 30, 2020. A photo taken by a mall tenant hours before the incident showed snow accumulation in the parking lot, but by the time Gelfond-Raskin arrived she did not see any snow, ice, or moisture on the pavement. Gelfond-Raskin brought a negligence claim against the building owner, property management, and snow removal contractor. Defendants moved for summary judgment, which the court granted, after striking the opinions of plaintiff's snow and ice removal expert, finding they lacked a factual basis. Gelfond-Raskin appeals, arguing the expert's opinion was not made speculative by the possibility of multiple contributing factors and she presented sufficient admissible evidence to survive summary judgment. We disagree and affirm.

¶ 3                                    I. BACKGROUND

¶ 4     A winter storm hit the Buffalo Grove area the night of December 29, 2020, and continued into the next day. Weather reports from the National Oceanic and Atmospheric Administration (NOAA) reflect that snow, rain, mist, and freezing fog began in the area around 4:00 p.m. on December 29 and continued through the night until 8:00 a.m. the morning of December 30. The temperature rose to 32 degrees at 11:27 p.m. on December 29 and reached a high of 35 at 4:51 a.m. the next morning before falling back below freezing at 12:51 p.m. The temperature remained below freezing for the rest of the day. When the temperature was freezing or above, reports indicate that the area was experiencing rain, mist, drizzle, and freezing rain.

¶ 5     Lyudmila Vaysman, the owner of Allegro Deli at the Grove Court strip mall in Buffalo Grove, arrived at her store around 6:00 a.m. on December 30. Vaysman observed snow and ice in the parking lot when she arrived. She sent an employee, Juan Martinez, out to shovel a path in the sidewalk for customers and took a photograph to send to the property manager to complain about

piles of snow and ice. The photograph depicts Martinez shoveling snow around the parking lot nearest the sidewalk, which includes the first row of parking spots, a cleared driving lane, and two more rows of parking spaces with snow piles spread throughout the parking lot. Later that day, Vaysman was told that her customer fell in the parking lot, and Vaysman observed Gelfond-Raskin on the ground near the second row of parked cars. Vaysman did not know if the parking lot was plowed after she took the picture and before Gelfond-Raskin fell.

¶ 6    Around 3:10 p.m., Gelfond-Raskin arrived at the strip mall and parked in the second row of the parking lot. It was not snowing and Gelfond-Raskin did not see any snow, ice or wetness on the ground. Gelfond-Raskin left the store and approached her vehicle. While walking through the driving lane, Gelfond-Raskin slipped and fell on the ground. Gelfond-Raskin felt "slippery" under her rear end and legs and touched "black ice" on the ground. The ice was solid and not melting or slush. Gelfond-Raskin fractured her ankle and required surgery.

¶ 7    Gelfond-Raskin sued defendants for negligence, alleging the defendants were negligent in allowing and permitting an "unnatural accumulation of ice and/or snow to accumulate on the surface of the sidewalk area" and they "improperly operated, managed, maintained and controlled the premises." Gelfond-Raskin alleged that "one or more" of the acts of negligence directly and proximately caused her injuries.

¶ 8    Defendants filed motions for summary judgment, arguing that Gelfond-Raskin failed to establish the ice on which she slipped and fell was an "unnatural accumulation" for which defendants would have owed a duty of care. In Gelfond-Raskin's Rule 213(f)(3) disclosures, she identified Michael Anderson as a controlled liability expert witness on snow and ice management who would opine as to the source of the ice in the parking lot. In his report, Anderson stated that his opinion was based on documents provided by Gelfond-Raskin's counsel including the

complaint and other filings, Vaysman's photograph of Martinez, NOAA weather reports, and the depositions of Gelfond-Raskin and Vaysman. According to Anderson, "it appears that the parking spaces where Ms. Gelfond slipped and fell had been partially cleared with a snowplow then allowed to freeze when the temperature dropped." He acknowledged that he does not know what, if any action the contracted snow removal company took that day, but nevertheless opined that "they did not clear the area between the sidewalk and parking lot where Mr. Martinez was directed to shovel" and "did not apply salt to deice the parking lot." Anderson ultimately concluded that Gelfond-Raskin "fell on or near a ridge of snow that had been plowed when the snowplow passed her car," and this "pile of snow or snow and ice" could be seen in the photograph "on the driver's side of the white van behind Mr. Martinez." According to Anderson, Gelfond-Raskin's fall "was not caused by a natural accumulation but was the result of an unnatural accumulation of ice and/or snow piled near her car."

¶ 9        At his deposition, Anderson acknowledged he had never been to the Grove Court shopping center and had no personal knowledge of the parking lot's condition on December 30, 2020. When shown the photograph of Martinez shoveling, Anderson pointed out a "ridge of snow outside the driver's side of [a] van" in the third row of parked cars. Anderson believed that was "either the exact place or close to the place where [Gelfond-Raskin] slipped and fell." When asked what "factual basis" he used to support his opinion that snow had been plowed into a ridge near Gelfond-Raskin's car, Anderson pointed only to the photograph of Martinez from earlier in the day. However, the photograph did not accurately depict the snow or ice as it would have existed by the time Gelfond-Raskin fell. Nonetheless, Anderson inferred that snow had been plowed into a ridge and allowed to freeze near Gelfond-Raskin's car because he did not see "any evidence" that someone had removed the snow after the picture.

¶ 10　　　　Anderson acknowledged that he did "not exactly" know where Gelfond-Raskin fell, but thought it was "somewhere near" the second and third rows of parked cars. He repeatedly stated that he thought Gelfond-Raskin testified there was a snow ridge near the location of her parked car on which she slipped. Anderson agreed that if Gelfond-Raskin had testified that she slipped and fell in the driving lane between the first and second row of parked cars, his opinion that the snow had been plowed into a ridge near her car would be "irrelevant." Anderson later stated, "That ridge of snow may have melted and drained down in that direction, but either way, the parking lane was wet and then froze from either the ridge melting or from the snow melting."

¶ 11　　　　Defendants thereafter filed a motion to strike and bar Anderson's opinion as unsupported and factually inaccurate. Specifically, defendants argued Anderson's opinions that Gelfond-Raskin fell near her car and on a ridge of snow or ice are "contrary to the unequivocal testimony and admissions of [Gelfond-Raskin] that she slipped in the through lane for vehicular travel and not near her car and that she slipped on 'black ice' – not a ridge of snow or ice." Accordingly, because Anderson's opinions had no factual support and were contrary to Gelfond-Raskin's admissions, they were speculative and inadmissible. In response, Gelfond-Raskin argued that Anderson's testimony that ice was present "in the general location" of her fall was supported by a sufficient factual basis and any discrepancies between his opinion and her testimony "goes to weight and not admissibility."

¶ 12　　　　The trial court granted summary judgment for defendants and entered an order barring and striking Anderson's opinions. In doing so, the court found the location where Gelfond-Raskin testified she fell was "substantially further from the piles of snow as to which [*sic*] the expert testified." The court also found, after reviewing the depositions, that "no one identified an unnatural accumulation of snow which they linked to refreezing where the plaintiff fell, the ice on which she fell." Specifically, Anderson "admitted he did not know where the water came from"

and had "never visited the area of the fall." After viewing the evidence in the light most favorable to Gelfond-Raskin, the court found that she failed to "present any evidence demonstrating an identifiable link between the unnatural accumulation and the ice on which she slipped."

¶ 13 The trial court later denied Gelfond-Raskin's motion to reconsider, reiterating that "experts do not need to provide testimony that something happened with absolute certainty, but their opinions still need to be based on fact." The court found Anderson did not "provide a sufficient factual basis for his conclusion that this was an unnatural accumulation." Gelfond-Raskin appeals.

¶ 14 II. ANALYSIS

¶ 15 Gelfond-Raskin argues the trial court erred in striking Anderson's opinions and granting summary judgment because Anderson's opinion had an adequate factual basis and she presented sufficient evidence to demonstrate a question of material fact as to whether the area she fell was icy due to an unnatural accumulation resulting from snow removal activities. We review *de novo* an order granting summary judgment and a motion to strike an expert's opinion in conjunction with the granting of summary judgment. *Berke v. Manilow*, 2016 IL App (1st) 150397, ¶¶ 21, 31.

¶ 16 A. Expert Opinions

¶ 17 Generally, "the opinion testimony of an expert is admissible if the expert is qualified by knowledge, skill, experience, training, or education in a field that has at least a modicum of reliability, and if the testimony would aid the jury in understanding the evidence." *Hudson v. City of Chicago*, 378 Ill. App. 3d 373, 400 (2007). "The trial court is not required to blindly accept the expert's assertion that his testimony has an adequate foundation. Rather, the trial court must look behind the expert's conclusion and analyze the adequacy of the foundation." *Id.* at 401. In the end, "[a]n expert's opinion is only as valid as the reasons for the opinion." *Id.* at 400.

¶ 18    "Expert opinions relying on speculation, conjecture, or guess as to what the witness believed might have happened are inadmissible." *Berke*, 2016 IL App (1st) 150397, ¶ 21. "When experts (i) fail to take into consideration a party's actions, (ii) base their opinions on facts not in evidence, (iii) base their opinions on what might have happened, and (iv) ignore significant factors, the court will reject the experts' opinions as mere speculation and conjecture." *Id.* Because Anderson's opinions in this case are speculative, the trial court did not err in striking them.

¶ 19    In his report, Anderson opined that Gelfond-Raskin "fell on or near a ridge of snow that had been plowed when the snowplow passed her car," and this "pile of snow or snow and ice" could be seen in the photograph "on the driver's side of the white van behind Mr. Martinez." According to Anderson, the fall "was not caused by a natural accumulation but was the result of an unnatural accumulation of ice and/or snow piled near her car." Anderson based his opinions on Gelfond-Raskin's complaint, Vaysman's photograph of Martinez shoveling, NOAA weather reports, and the depositions of Gelfond-Raskin and Vaysman, among other documents. He had never been to the Grove Court shopping center and had no personal knowledge of the parking lot's condition on December 30, 2020.

¶ 20    When asked what factual basis he used to support his opinion that snow had been plowed into a ridge near Gelfond-Raskin's car, Anderson pointed only to the photograph of Martinez but acknowledged that the photograph did not accurately depict the snow or ice as it would have existed by the time Gelfond-Raskin fell. According to Anderson, he believed that snow had been plowed into a ridge and allowed to freeze near Gelfond-Raskin's car because he did not see "any evidence" that someone had removed the snow after the picture. Anderson repeatedly stated he thought Gelfond-Raskin testified at her deposition that there was a snow ridge near the location of her parked car that she slipped on. However, Gelfond-Raskin testified she did not see any snow, ice, or wetness on the ground when she arrived at Grove Court, and she slipped and fell in the

driving lane between the first and second row of parked cars, not near her car. This unrefuted testimony renders Anderson's opinion speculative based on conjecture and guess, not facts.

¶ 21    When confronted with his misinterpretation of Gelfond-Raskin's testimony during the deposition, Anderson agreed that if Gelfond-Raskin had testified that she slipped and fell in the driving lane between the first and second row of parked cars, his opinion that the snow had been plowed into a ridge near her car would be "irrelevant." Anderson later stated, "That ridge of snow may have melted and drained down in that direction, but either way, the parking lane was wet and then froze from either the ridge melting or from the snow melting." Even in changing his opinions to fit Gelfond-Raskin's testimony, Anderson's conclusion about what "may have" happened was presented without a factual basis. He did not testify regarding the slope or pitch of the parking lot, its condition at the time of the slip, or any snow removal practices between the time of the photo and Gelfond-Raskin's fall. Anderson's opinion that the ice was a result of unnatural accumulation was entirely speculative.

¶ 22    Gelfond-Raskin contends that Anderson's opinions should not have been stricken because experts "may testify in terms of what 'might or could' have caused the plaintiff's injury." She also contends that Anderson's opinions were not inadmissible simply because it did not "exclude all other possible causes" of the ice patch. In support, Gelfond-Raskin cites *Hawn v. Fritcher*, 301 Ill. App. 3d 248, 253 (1998) and *Mesick v. Johnson*, 141 Ill. App. 3d 195, 205 (1986). However, both cases involve testimony from medical doctors that testified as to what "might or could have" caused the plaintiffs' injuries based on their own physical examinations of the plaintiffs and their medical histories. See *Hawn*, 301 Ill. App. 3d at 250; *Mesick*, 141 Ill. App. 3d at 198-99. At a base level, the experts in those cases had a significantly more sufficient factual basis than Anderson, whose opinion was based mostly on a misinterpretation of Gelfond-Raskin's testimony and a

photograph from hours before the fall, not personal observations. Because Anderson's opinions were based on speculation, the trial court did not err in striking them.

¶ 23                                    B. Summary Judgment

¶ 24        Summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2024). Because summary judgment is a drastic measure, it should only be granted when the moving party's right to judgment is "clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). All pleadings, depositions, admissions, and affidavits are construed against the moving party in determining whether there is a genuine issue of material fact. *Id.* at 131-32. While the nonmoving party need not prove her case during a summary judgment proceeding, she must present some evidence that would arguably entitle her to recover at trial. *Keating v. 68th & Paxton, L.L.C.*, 401 Ill. App. 3d 456, 472 (2010). "Although a plaintiff may rely on reasonable inferences which may be drawn from the facts considered on a motion for summary judgment, an inference cannot be established on mere speculation, guess or conjecture." *Salinas v. Werton*, 161 Ill. App. 3d 510, 515 (1987).

¶ 25        Generally, landowners owe no duty to remove natural accumulations of ice, water, or snow from their property. *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 227 (2010). Natural accumulations are "caused by the mere falling and settling of snow or precipitation." *Mickens v. CPS Chicago Parking, LLC*, 2019 IL App (1st) 180156, ¶ 26. A landowner may, however, be held liable for an injury caused by an unnatural accumulation of snow or ice. *Id.* ¶¶ 28 -29. Various theories of liability for an unnatural accumulation have been recognized. One theory arises when snow or ice builds up due to artificial or unnatural causes and the defendant is responsible for the

unnatural accumulation, based on a defective condition or negligent maintenance of the premises. *Lopez-Arana v. Brian Properties, Inc.*, 2024 IL App (1st) 231652, ¶ 19. "To prevail on a claim of negligence based on an unnatural accumulation, a plaintiff must prove (1) the accumulation of snow or ice was unnatural and (2) the landowner had actual or constructive knowledge of the dangerous condition." *Id*.

¶ 26 In this case, Gelfond-Raskin argues she presented evidence that snow was plowed into piles, temperatures rose and fell, water pooled near the snow piles, and she fell in that area. According to her, this was enough to create a question of fact as to whether "the snow removal activities created an unnatural accumulation of ice."

¶ 27 However, Gelfond-Raskin failed to present *any* evidence as to what snow removal activities, including plowing, took place. Instead, she points only to the single photograph taken hours before her fall that "shows large snow ridges near the area where [she] fell, with adjacent puddling." She testified at her deposition that she did not see any snow, ice or "wetness at all" on the ground when she was in the parking lot before her fall. Nor was there evidence of the physical characteristics of the parking lot (beyond the photograph) that could lead to the conclusion that snow piled in one location melted and moved to another place hours later. Gelfond-Raskin's argument relies entirely on "speculation, guess or conjecture," and is insufficient to survive summary judgment. See *Salinas*, 161 Ill. App. 3d at 515; see also *Lopez-Arana*, 2024 IL App (1st) 231652, ¶ 24 ("Plaintiff's speculation that the ice on which she fell formed as the result of the underlying condition of the parking lot is insufficient to survive summary judgment.").

¶ 28 Gelfond-Raskin cites two slip-and-fall cases where this court found genuine issues of material fact because of circumstantial evidence of an unnatural accumulation of snow or ice. These cases are distinguishable because the plaintiffs were able to identify the cause of their fall

and produce evidence linking it to defendants' snow removal procedures. For example, in *Mickens v. CPS Chicago Parking, LLC*, 2019 IL App (1st) 180156, the evidence showed snow was plowed and piled at the top of a ramp that sloped downhill, there was no precipitation after the snow was plowed, and temperatures fluctuated but stayed below freezing the day of the accident. *Id.* ¶¶ 16, 33. In finding a genuine issue of material fact existed, this court noted, "We can't say one way or the other conclusively, and we don't purport to do so" but stated, "one might wonder how *else* the ice could have formed *but* unnaturally." (Emphasis in original.) *Id.* ¶¶ 42-43.

¶ 29 Similarly, in *Russell v. Village of Lake Villa*, 335 Ill. App. 3d 990 (2002), evidence showed the plaintiff slipped on a patch of ice that had formed an apron over brick pavers at the base of a pile of snow that had been plowed under an overhang at a train station. *Id.* at 992. The court found the plaintiff had presented facts that would indicate a direct link between the ice he slipped on and the snow pile where there was evidence that the ice "surrounded the base of the snow pile and was contiguous with it and appeared to have come from water that melted off the snow." *Id.* at 996.

¶ 30 Unlike in *Mickens* or *Russell*, Gelfond-Raskin presented no evidence beyond speculation, guess, or conjecture linking the snow piles in the parking lot hours earlier with the patch of ice on which she slipped. There is no evidence the parking lot was sloped and no suggestion that the ice was adjacent to any manmade snow pile. Because Gelfond-Raskin failed to raise a genuine issue of material fact to support her claim that the ice on which she slipped was an unnatural accumulation, the trial court properly granted summary judgment in favor of defendants.

¶ 31          III. CONCLUSION

¶ 32 For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 33 Affirmed.